**UNITED STATES of America,**
**Appellee,**

v.

**Thomas Henry MARRA, Defendant-**
**Appellant.**

**No. 986, Docket 73-1464.**

United States Court of Appeals,
Second Circuit.

Argued June 20, 1973.

Decided July 12, 1973.

Herbert Ira Handman, New York City, for defendant-appellant.

S. Andrew Schaffer, Asst. U. S. Atty., (Paul J. Curran, U. S. Atty., for S. D. N. Y., John J. Kenney, John W. Nields, Jr., Asst. U. S. Attys., of counsel), for appellee.

Before FRIENDLY, FEINBERG and MANSFIELD, Circuit Judges.

MANSFIELD, Circuit Judge:

This appeal raises the perplexing question of what procedure must be followed by a trial judge before holding a witness in contempt for refusal to obey an order directing the witness to testify after immunity has been granted. Thomas Henry Marra appeals from an order of summary criminal contempt entered on January 16, 1973, pursuant to Rule 42(a)[1] of the Federal Rules of

---

1. Rule 42 of the F.R.Cr.P. provides:

"(a) *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

Criminal Procedure and 18 U.S.C. § 401(3)[2] by Judge Constance Baker Motley of the United States District Court for the Southern District of New York. Marra, in the presence of the jury, had invoked the Fifth Amendment privilege against self-incrimination in response to certain questions posed by the prosecution despite a grant of immunity pursuant to 18 U.S.C. §§ 6002 and 6003. Since we conclude that summary disposition under Rule 42(a), F.R.Cr.P., was not available to the court under the circumstances of this case, the order of contempt is reversed.

Marra was subpoenaed as a government witness in the prosecution of Kenneth Krevey, who along with Frank Anthony Conte, was charged with possessing and passing counterfeit federal notes and conspiring to commit these substantive offenses in violation of 18 U.S.C. §§ 472 and 371. Because Marra, who had pleaded guilty to one count in each of two indictments arising from violations of the counterfeiting laws,[3] planned to invoke the Fifth Amendment privilege upon being questioned, the Assistant United States Attorney had applied for an order granting immunity. The government advised the court, when Marra appeared at the time of trial on January 15, 1973, without his then counsel, Donald Gilbert, that Mr. Gilbert had been apprised of the pending application for immunity and of the intention to call Marra as a witness.

Outside of the presence of the jury, Judge Motley questioned Marra as to his willingness to testify. Marra informed the court that his lawyer had "advised me . . . to answer as many ques-

"(b) *Disposition Upon Notice and Hearing.* A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

2. Title 18, § 401 provides in pertinent part:

 "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt and its authority and none other, as—
 
 "(1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice,

 \* \* \* \* \*
 
 "(3) disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

3. At the time of the Krevey trial, Marra faced two related pending indictments. In the first indictment, 72 Cr. 690, he and one Vincent Barone were charged with three counts, the first for conspiracy, 18 U.S.C. § 371; the second charged the passing and uttering of forged federal reserve notes, in violation of 18 U.S.C. § 472; and the third charged possession of the forged reserve notes also in violation of 18 U.S.C. § 472.

 The second indictment, 72 Cr. 1367, originally lodged in the Eastern District of New York but which was transferred to the Southern District, contained two counts, the first for possessing counterfeit federal reserve notes in violation of 18 U.S.C. § 472, and the second for transferring, delivering and selling (dealing in) reserve notes, in violation of 18 U.S.C. § 473.

 On January 9, 1973, Marra pleaded guilty to the conspiracy count of the first indictment and to the dealing count (No. II) of the second indictment.

 On February 26, 1973, Judge Pollack sentenced Marra to two years imprisonment on each of the two counts to which he had pleaded guilty, such terms to run consecutively. The remaining counts were dismissed.

tions as I can but since I have cases pending in this Court, . . . not to say anything that would incriminate me either in this matter or the matters pending." Notwithstanding Judge Motley's ensuing explanation that the grant of immunity would prevent the government from using any of his testimony against him and that a refusal to testify might result in a finding of contempt, Marra persisted in stating his intention to invoke the Fifth Amendment. Still outside the presence of the jury, Marra was then sworn as a witness and questioned by the government. Following his refusal to testify the court signed the order granting immunity, and instructed him to consult with his attorney concerning the effect of the grant of immunity and to be prepared to testify the next day.

On January 16, 1973, Marra returned and was again questioned outside of the hearing of the jury, at which time he gave testimony contrary to that expected of him by the prosecution. After reiterating the consequences of the grant of immunity but cautioning that such grant did not insulate a witness from a possible perjury charge, Judge Motley stated that it was her "feeling that the Government now has the right to assume that when Mr. Marra testifies now he will testify in accordance with the way he previously answered questions put to him by Mr. Tulley."

Upon being sworn as a witness before the jury Marra, after responding to a few preliminary questions, refused to answer the prosecutor's inquiry as to a "transaction with Krevey concerning counterfeit currency," stating that he would "rather not answer any more questions since I could be incriminating myself until my attorney is here. I have no legal advice here at all." When he further invoked the Fifth Amendment in response to another question, Judge Motley excused the jury and reviewed with him again the consequences of his refusal to answer after being granted immunity and being ordered to answer, including the probability of imprisonment for contempt. When the witness nevertheless persisted in his refusal, Judge Motley decided that criminal contempt was appropriate, after concluding that "civil contempt would be ineffective to compel compliance." Later on the same day, acting pursuant to Rule 42(a) and 18 U.S.C. § 401(3), she summarily found Marra in contempt for his "refusal to answer a material question" and sentenced him to a term of imprisonment of three months.[4] On January 17, 1973, two days after the commencement of the trial and one day after Marra had been summarily found in contempt, the jury found Krevey guilty on all counts.

In an opinion dated February 22, 1973, which nominally dealt with a motion for bail pending appeal, Judge Motley rejected the claim that "summary criminal contempt cannot be used to punish testimonial failures" and concluded that in any event Marra's conduct "show[ed] a calculated design to obstruct a court proceeding." Finally Judge Motley denied Marra's claim that he was improperly denied the right to counsel.[5]

By repeatedly instructing the witness as to his responsibilities and giving him

---

4. Marra's sentence commenced on January 16, 1973, the day of the Rule 42(a) disposition. On January 26, 1973, Marra filed a motion for bail pending appeal. As no steps to perfect the appeal, other than the filing of a notice of appeal, had been taken, the court ordered Marra released on bail pending appeal, on condition that the appeal be perfected within 10 days from February 7, 1973. Since Marra apparently failed to perfect the appeal within the time allotted by Judge Motley, he was recommitted to confinement. Thus Marra has already served the three-month sentence.

5. Because we find that summary disposition of contempt under Rule 42(a) was inappropriate under the circumstances, we do not reach the Sixth Amendment question of the right to counsel in proceedings under Rule 42(a).

the opportunity to seek the advice of independent counsel before finally responding to her order to testify, the district judge appears to have conscientiously sought to strike a balance between the court's interest in commanding respect for the judicial process and the witness' right to procedural due process protection. Indeed, if we were writing on a *tabula rasa* the court's use in this case of the summary contempt procedure provided by Rule 42(a) would seem appropriate enough, especially since Marra's defiance of the court's order took place in the jury's presence after immunity had been granted and it tended to obstruct an ongoing proceeding. But we are confronted with well-entrenched authority, including decisions of the Supreme Court and of our own court, squarely holding that summary procedure may not be used to punish a testimonial refusal of the type here encountered. In Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), which overruled Brown v. United States, 359 U.S. 41, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959), Harris, appearing as a witness before the grand jury, refused to answer certain questions on Fifth Amendment grounds despite the trial judge's promise of immunity. Harris was then brought before the court where he was represented by counsel and, after being given the opportunity to purge himself by testifying, continued to invoke the privilege against self-incrimination. Thereupon he was summarily adjudged guilty of criminal contempt under Rule 42(a). The Supreme Court reversed, holding that under the circumstances the summary punishment constituted an abuse of the contempt power, and that a Rule 42(b) proceeding was required.

█ Although *Harris* might be construed as being limited to instances where a witness repeats before the court a testimonial refusal originally committed outside of its presence, we are persuaded by the language of the opinion that such an interpretation would be un-

duly restrictive. The Court emphasized that "Rule 42(a) was reserved 'for exceptional circumstances,' Brown v. United States, 359 U.S. 41, 54, 79 S.Ct. 539, 3 L.Ed.2d 609 (dissenting opinion), such as acts threatening the judge or disrupting a hearing or obstructing court proceedings . . . [where] [s]peedy punishment may be necessary in order to achieve 'summary vindication of the court's dignity and authority,' Cooke v. United States, 267 U.S. 517, 534, 45 S.Ct. 390, 69 L.Ed. 767. But swiftness was not a prerequisite of justice here." 382 U.S. at 164, 86 S.Ct. at 354. Absent such disruptive conduct, which afronts the dignity of the court, a hearing pursuant to Rule 42(b) is required to explore possible exculpatory or mitigating circumstances. "[W]hat appears to be a brazen refusal to cooperate . . . may indeed be a case of frightened silence. Refusal to answer may be due to fear—fear of reprisals on the witness or his family. Other extenuating circumstances may be present." 382 U.S. at 166, 86 S.Ct. at 355.

Any doubt as to the ambit of *Harris* was resolved by our decision in United States v. Pace, 371 F.2d 810 (2d Cir. 1967), which controls the outcome in this case. In *Pace* we applied the broad underpinnings of *Harris* to reverse the summary conviction for criminal contempt under Rule 42(a) of a witness who, in the presence of the court but with the jury absent, refused to testify on the ground that the answers might tend to incriminate him. In rejecting a narrow reading of *Harris* we stated in terms applicable here:

"[S]ummary disposition is thus available only when immediate punishment is necessary to put an end to acts disrupting the proceedings, such as threats to the judge, disturbances in the courtroom or insolence before the court. It is not a remedy to be used in a case like this where the contempt consists of no more than orderly refusal in the absence of the jury to an-

swer a question on Fifth Amendment grounds. . . . " 371 F.2d at 811.

■ Because summary contempt under Rule 42(a) deprives the contemnor of procedural safeguards, its limited use is "to prevent 'demoralization of the court's authority' before the public." In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 500, 92 L.Ed. 682 (1948), quoting Cooke v. United States, 267 U.S. 517, 536, 45 S.Ct. 390, 69 L.Ed. 767 (1925). Cf. 8A J. Moore, Federal Practice ¶ 42.04[2] (2d ed. 1972).

> "To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. . . . Such summary vindication of the court's dignity and authority is necessary." Cooke v. United States, *supra*, 267 U.S. at 534, 45 S.Ct. at 394.

Thus, to invoke Rule 42(a) the contempt must not only be committed "directly under the eye or within the view of the court . . . [but must be] an open threat to the orderly procedure of the court and . . . a flagrant defiance of the person and presence of the judge before the public. . . ." *Id.* at 536, 537, 45 S.Ct. at 394.

■ Here the district judge suffered no obloquy from Marra's respectful and orderly refusal to testify. The government's attempt to paint his conduct as sufficiently contumacious to exclude it from the ambit of *Pace* is contradicted by the record and belied by the fact that Marra's conduct was found violative of 18 U.S.C. § 401(3), which proscribes "disobedience or resistance to [the court's] lawful . . . order" rather than § 401(1), which prohibits "misbehavior of any person in [the court's] presence or so near thereto as to obstruct the administration of justice." Nor can this case be brought outside the *Pace* rule on the grounds that here immunity had been granted. In

*Harris*, which *Pace* applied, the district court explicitly promised the award of immunity.

■ It is true that Marra's refusal to testify occurred in the presence of the jury whereas in *Pace* the jury was absent. But this distinction, standing alone, lacks significance. Both refusals occurred in the court's presence. In the present case Marra's earlier persistent reluctance to cooperate outside the jury's presence suggested to the court that reenactment of the conduct before the jury was a possibility. While an orderly refusal in the added presence of the jury may increase the chance of demoralization of the court's authority that fact alone, under the *Harris-Pace* test, does not usually embarrass the court sufficiently to warrant summary contempt procedure during Rule 42(a). Nor is there any evidence that the deliberative action of the court would be unduly disrupted. Faced with such conduct the court has the power, which it exercised in this case, to maintain its dignity without prolongation of any confrontation with the witness. For instance it may declare a brief recess for the purpose of holding the witness in civil contempt as authorized by 28 U.S. C. § 1826 and scheduling a hearing at an early date pursuant to Rule 42(b).

We do not agree with the contention, which the First Circuit has apparently accepted, see Baker v. Eisenstadt, 456 F.2d 382 (1st Cir.), cert. denied, 409 U. S. 846, 93 S.Ct. 118, 34 L.Ed.2d 87 (1972), that Groppi v. Leslie, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972), undermines *Pace*. *Groppi* itself involved an attempted imposition by a state legislature of summary contempt on the leader of a group which occupied the Wisconsin State Assembly for an extended period of time and disrupted the legislature's proceedings. Such conduct goes far beyond an orderly refusal to testify. Furthermore, the summary imposition of contempt there was found to violate due process for the reason that the two-day hiatus between the wrongful

conduct and the imposition of punishment was sufficient to permit notice and an opportunity to be heard. *Groppi* in no way dealt with the question before this court—whether proceedings should be under Rule 42(b) rather than Rule 42(a).

■ Our conclusion that summary disposition of contempt under Rule 42(a) was inappropriate under the circumstances does not render district judges powerless. The combination of the inherent authority to impose civil contempt under 28 U.S.C. § 1826 and the power to impose Rule 42(b) criminal contempt upon notice and hearing should in most cases be as adequate as summary criminal contempt under Rule 42(a) to enable the court to achieve the dual ends of inducing a reluctant witness to testify and of punishing his defiance of the court's order to do so. Cf. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968). "Where contempt consists of refusal to obey a court order to testify at any stage in judicial proceedings, the witness may be confined until compliance," Shillitani v. United States, 384 U.S. 364, 370, 86 S. Ct. 1531, 1535, 16 L.Ed.2d 622 (1966). The doctrine that the court must exercise the least possible power adequate to the end proposed "requires that the trial judge first consider the feasibility of coercing testimony through the imposition of civil contempt," *id.*, at 371 n. 9, 86 S.Ct. at 1536. If the wrongful conduct persists, criminal contempt under Rule 42(b) may then be appropriate. "The civil and criminal sentences [serve] distinct purposes, the one coercive, the other punitive and deterrent; that the same act may give rise to these distinct sanctions presents no double jeopardy problem. Rex Trailer Co. v. United States, 350 U.S. 148, 150, 76 S.Ct. 219, 220, 100 L.Ed. 149 (1956); United

States v. United Mine Workers, 330 U.S. 258, 299, 67 S.Ct. 677, 698, 91 L.Ed. 884 (1947)." Yates v. United States, 355 U.S. 66, 74, 78 S.Ct. 128, 133, 2 L.Ed.2d 95 (1957). (Civil and criminal sanctions imposed for one contempt of a continuing nature.)

We recognize that in a short trial the civil sanction may alone be inadequate. With the termination of the trial and discharge of the jury the witness could no longer be civilly confined, since the opportunity to purge himself would cease to exist. Before the conclusion of the trial, however, prompt punishment for criminal contempt may still be feasible. The notice and hearing requirements of Rule 42(b) are sufficiently flexible to enable the trial judge, upon learning that the witness will not respond to its civil contempt order, to act with dispatch. In an uncomplicated case of the present type, where the facts are simple and a brief consultation between the witness and his retained or assigned counsel should be sufficient to enable him to prepare for a Rule 42(b) hearing, there appears to be no sound reason why the hearing could not be held within a day or two of the witness' refusal to obey the court's order. Since the hearing would in all likelihood require no more than an hour or two of the court's time, trial of the criminal case could be suspended with a minimum disruption to the judicial process. Such a procedure, furthermore, lessens the risk that the witness' contumacy is the result of fright, confusion, or misunderstanding. Indeed, with the advice of counsel, or faced with imposition of a criminal sentence, he may decide to cooperate.

Because Marra has already served his sentence, it would be useless to remand the case to conform to these procedures. Accordingly the order of contempt pursuant to Rule 42(a) is reversed.