UNITED STATES of America,
Appellee,

v.

Thomas Joseph WILSON and Bobby
Antonio Bryan, Appellants.

Nos. 83, 101, Dockets 73-1574, 73-1575.

United States Court of Appeals,
Second Circuit.

Argued Oct. 15, 1973.

Decided Nov. 28, 1973.

Sheila Ginsberg, New York City
(Robert Kasanof, The Legal Aid Society,
New York City, on the brief), for appel-
lant Wilson.

Herbert Ira Handman, New York City, for appellant Bryan.

Kenneth R. Feinberg, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty. for the Southern District of New York, John D. Gordan III, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, FRIENDLY and FEINBERG, Circuit Judges.

FEINBERG, Circuit Judge:

Thomas Joseph Wilson and Bobby Antonio Bryan appeal from judgments of the United States District Court for the Southern District of New York, Morris E. Lasker, J., finding them guilty of criminal contempt for refusing to testify in the trial of Robert Joel Anderson for armed bank robbery. Both Wilson and Bryan were sentenced by Judge Lasker to six months imprisonment. They challenge their contempt convictions, arguing that they had the right to refuse to incriminate themselves and that, in any event, the procedure followed by the judge was defective. For reasons set forth below, we reject the fifth amendment claim but reverse for further proceedings before Judge Lasker under Rule 42(b) of the Federal Rules of Criminal Procedure.

I

The indictment on which Anderson was tried charged him with armed robbery of the Nanuet National Bank in Mt. Ivy, New York, and the Empire National Bank in Tuxedo, New York. The same indictment charged appellant Wilson, too, with robbery of the latter bank. This case was assigned to Judge Lasker. A separate indictment also charged appellant Bryan with the Nanuet bank robbery. This indictment was assigned to Judge Irving Ben Cooper. By the time Anderson's case came to trial before Judge Lasker in March 1973, both appellant Wilson and appellant Bryan had pleaded guilty to charges against them. However, neither had been definitively sentenced. Wilson's plea had been taken by Judge Lasker, who had deferred sentence.[1] Bryan had pleaded before Judge Cooper, who had imposed a provisional 25-year sentence (the statutory maximum), pending an evaluation under 18 U.S.C. § 4208(b).[2]

During Anderson's trial, the Government called appellants Bryan and Wilson as witnesses, the former on the Nanuet, and the latter on the Empire, bank robbery. Each refused to testify on self-incrimination grounds and persisted in this stance even though each received immunity under 18 U.S.C. §§ 6002–6003, and the judge warned that a contempt finding would follow. When Wilson and Bryan continued to balk, Judge Lasker immediately found each one separately in contempt, and sentenced both to six months in prison consecutive to whatever sentences they received on the counts to which they had pleaded guilty. Counsel for Wilson was present throughout and, in the absence of counsel for Bryan, she attempted with the court's sanction to represent the latter as well.

II

As previously noted, at the time appellants were called as witnesses in the trial of Anderson, they had not yet been finally sentenced on their own guilty pleas. Their uncertainty as to the eventual sentences forms the basis for their broadest argument on appeal. They claim that any admission by them of the details of participation in armed robbery might weigh against them with the sentencing judge—in Wilson's case, the very judge who would hear the testimony, and in Bryan's, a judge of the same court who could obtain the transcript. The Government responds that the privilege against self-incrimination ends immediately and completely with a guilty plea and that, in any event, the claim of

1. On June 1, 1973, the judge committed Wilson as a Young Adult Offender for an indeterminate term under 18 U.S.C. § 5010(b), as extended by 18 U.S.C. § 4209.

2. On August 14, 1973, after Anderson's trial, and after receipt of a report under 18 U.S. C. § 4208(b), Judge Cooper reduced Bryan's sentence to ten years.

privilege was not justified on these facts. Although the first argument raises substantial issues[3] and there is much to commend the second,[4] we need not deal with either. The grant of immunity under 18 U.S.C. §§ 6002–6003 is dispositive here.

One of the major purposes of that statute was to prevent what occurred in this case: the refusal of accomplices to testify about a crime, thereby aborting a conviction. (Indeed, Bryan succeeded admirably—if that was his motive—since the Nanuet bank robbery counts were, without his testimony, dismissed at the close of the Government's case.) Because of the asserted danger of adverse use of the compelled testimony in sentencing, however, appellants contend that the immunity given was not coextensive, as is required, with the scope of the fifth amendment privilege. Kastigar v. United States, 406 U.S. 441, 449, 92 S.Ct. 1653, 32 L. Ed.2d 212 (1972). But neither Wilson nor Bryan followed what we deemed to be proper procedure in raising the issue of "forbidden use."[5] If appellant Wilson doubted the ability of Judge Lasker to put out of his mind Wilson's statements at Anderson's trial, he should nevertheless have testified as ordered, but requested a different judge for sentencing on the robbery charge.[6] Cf. Gold-

berg v. United States, 472 F.2d 513, 516 (2d Cir. 1973). Similarly, if Bryan genuinely feared an increased sentence on his guilty plea as a result of testifying in the *Anderson* case, he, too, should have given evidence, then asked that proper precautions be taken (e. g., sealing the record) to insure that Judge Cooper would not be privy to the statements made under grant of immunity. Both were, however, required to obey the mandate of 18 U.S.C. § 6002 that "the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination . . . ." Since appellants, on the contrary, selected a wholly improper means of testing their constitutional claim, the contempt judgments would stand regardless of the true extent of the privilege (an issue we need not reach), were it not for the fact that the trial judge erred procedurally in arriving at his findings. To this additional problem we now direct our attention.

### III

Our recent opinion in United States v. Marra, 482 F.2d 1196 (1973), held that use of the summary criminal contempt sanction of Fed.R.Crim.P. 42(a) was inappropriate in the case of an orderly refusal to testify on fifth amendment grounds despite a grant of

3. None of the cases cited by the Government hold that a guilty plea immediately and completely ends the privilege even though sentence has not yet been imposed. The statement in United States v. Sanchez, 459 F.2d 100, 103 (2d Cir.), cert. denied, 409 U.S. 864, 93 S.Ct. 156, 34 L.Ed.2d 112 (1972), relied on by the Government, was made without discussion; the dispositive factor was that the witness had not even been called. Although United States v. Gernie, 252 F.2d 664, 670 (2d Cir.), cert. denied, 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073 (1958), contains a similar statement, the witness in that case had already been sentenced. Cf. United States ex rel. Sniffen v. Follette, 439 F.2d 1082, 1083–1084 (2d Cir. 1971). But cf. United States v. Sclafani, 487 F.2d 245, 250–252 (2d Cir. 1973), cert. denied, —— U.S. ——, 94 S.Ct. 445, 38 L.Ed.2d 313 (1973). See generally McCormick on Evidence § 121 (2d ed. 1972) for the proposition that—at

least when there has been a conviction after a trial rather than after a guilty plea—the privilege continues not only until after sentencing but also until after the time for appeal as of right has expired.

4. The record shows, and oral argument substantiated, that Wilson refused to testify out of "adolescent loyalty" in order "to save a friend"—a motive possibly shared by Bryan, who had already been provisionally sentenced. Moreover, Wilson had earlier told the details of his complicity in the crime to the pre-sentence investigator from the Probation Office.

5. We do not decide that the potential uses would have been "forbidden."

6. Wilson's default in this respect is another factor that casts in doubt the legitimacy of his invocation of privilege. See note 4 supra and accompanying text.

immunity. The proper course would have been to proceed under subdivision (b) of the Rule, which calls for disposition on notice and hearing, permitting "a reasonable time for the preparation of the defense." [7] Since the district judge here immediately found both Wilson and Bryan in contempt upon their separate orderly refusals to answer the prosecution's questions, appellants argue that *Marra* governs, and compels reversal of the judgments. We agree, and therefore remand for further proceedings pursuant to Rule 42(b).

■ At the outset, appellee contends that the failure of appellants to object to the summary procedure below bars them from raising the claim on appeal. We hold, however, that under the circumstances, the request by counsel for Wilson for more time to research the fifth amendment issue constituted sufficient objection. And we refuse to penalize appellant Bryan for his failure to make timely objection to the Rule 42(a) proceeding, since his own counsel was not present. Although counsel for Wilson did her best to protect Bryan, the court having sanctioned her efforts in this regard, only a defendant's own lawyer could be fully aware of the considerations which might be raised in his behalf to mitigate a charge of contempt or the sentence thereunder, and of the likely usefulness of a hearing for development of these considerations.

Appellee also contends, in an effort to distinguish *Marra*, that Bryan and Wilson received the substance, if not the form, of a Rule 42(b) proceeding since both were represented by counsel and given a full opportunity to be heard. Mere presence of counsel, however, even had it been each defendant's own counsel, would not be determinative. In Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965), upon which *Marra* relies, counsel was also present.

Nor is the bare "opportunity to be heard" dispositive here since the "hearing" was confined to the matter of sentence. If, however, counsel had been given "a reasonable time for the preparation of the defense," Fed.R.Crim.P. 42(b), she might have marshalled and presented facts in mitigation of the charge. Significantly, the record reveals the possibility of a psychiatric defense, at least for Wilson. Some of Wilson's psychological problems, disclosed by a court-ordered study, were explored at an abortive sentencing hearing on his guilty plea, preceding the refusal to testify. With respect to that conviction, Judge Lasker concluded: "I do not believe that in this complicated case I have sufficient information before me to permit me justly to proceed to sentence with Mr. Wilson." Shortly thereafter, nonetheless, he proceeded to sentence him for contempt. With additional time to prepare a defense, counsel for Wilson might have enlarged on the issue of appellant's mental health, and perhaps shown a relationship between any psy-

---

7. Fed.R.Crim.P. 42 provides.

(a) *Summary Disposition.* A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.

(b) *Disposition Upon Notice and Hearing.* A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.

chological difficulties and the refusal to serve as a witness. Finally, becaue of the posture of the case, the record is silent on other facts which may well exist in defense or mitigation of the charge against both appellants, and which could be properly developed at a plenary hearing.

Accordingly, since United States v. Marra, *supra*, controls, we reverse the judgments of contempt and remand for further proceedings pursuant to Rule 42(b).