# UNITED STATES *v.* WILSON ET AL.

No. 73–1162.   Argued December 17, 1974—Decided May 19, 1975

BURGER, C. J., delivered the opinion of the Court, in which STEW-ART, WHITE, BLACKMUN, POWELL, and REHNQUIST, JJ., joined. BLACKMUN, J., filed a concurring opinion, in which REHNQUIST, J., joined, *post*, p. 320. BRENNAN, J., filed a dissenting opinion, in which DOUGLAS and MARSHALL, JJ., joined, *post*, p. 322.

*Gerald P. Norton* argued the cause for the United States. On the brief were *Solicitor General Bork, Assistant Attorney General Petersen, Deputy Solicitor General Frey,* and *William L. Patton.*

*Sheila Ginsberg* argued the cause for respondent Wilson. With her on the brief were *William E. Hellerstein* and *Phylis Skloot Bamberger. John S. Martin, Jr.,* argued the cause and filed a brief for respondent Bryan.

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether a district court may impose summary contempt punishment under Fed. Rule Crim. Proc. 42 (a) [1] when a witness who has been granted immunity, refuses on Fifth Amendment grounds to testify. The Court of Appeals held that in such circumstances a judge cannot dispose of the contempt summarily, but must proceed under Rule 42 (b), [2]

---

[1] Rule 42 (a) provides:

"(a) Summary Disposition.

"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

[2] Rule 42 (b) provides:

"(b) Disposition Upon Notice and Hearing.

"A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting

which calls for disposition only after notice and hearing, and "a reasonable time for the preparation of the defense."

I

Respondents Wilson and Bryan, along with one Robert Anderson, were charged in separate indictments with separate bank robberies. Respondent Wilson, and Anderson, were charged with armed robbery of a bank in Tuxedo, N. Y. Respondent Bryan, and Anderson, were charged with armed robbery of a bank in Mount Ivy, N. Y. Prior to Anderson's trial both respondents pleaded guilty to charges against them, but neither was immediately given a final sentence. Sentencing of Wilson was deferred, and, pending a presentence report, Bryan was given a provisional 25-year sentence, as required by 18 U. S. C. §§ 4208 (b), (c).

At Anderson's trial for the two robberies, respondents were summoned as witnesses for the prosecution. When questioned, however, each refused to testify, contending that his answers might incriminate him. The judge then granted them immunity, 18 U. S. C. §§ 6002–6003,[3]

the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

[3] In the Court of Appeals respondents contended that the immunity granted was not coextensive with the scope of the Fifth Amendment privilege against self-incrimination. *Kastigar* v. *United States*, 406 U. S. 441, 449 (1972). The Court of Appeals ruled that respondents had not raised the claim in a proper fashion, and

and, relying on *Goldberg* v. *United States,* 472 F. 2d
513 (CA2 1973), ordered them to answer forthwith. He
informed them that as long as they did not lie under
oath they could not be prosecuted by reason of any testi-
mony, but that if they continued to refuse to answer he
would hold them in contempt. Respondents neverthe-
less persisted in their refusals, and the judge summarily
held them in contempt. Counsel for Wilson, who acted
for both respondents, argued for lenient sentences; how-
ever, trial counsel made no objection to the summary
nature of the contempt citation,[4] nor was any claim made
that more time was needed to prepare a defense to the
contempt citation.

Both respondents were then sentenced to six months'
imprisonment, consecutive to any sentences imposed for
the bank robberies. The judge made it clear that he
would consider reducing the contempt sentences, or
eliminating them completely, if respondents decided to
testify. When counsel pointed out that a presentence
study was being prepared on Bryan the judge responded:
"I am going to impose the maximum . . . with the delib-
erate intention of revising that sentence to what might
be appropriate in light of the very study that is going
to be made." App. 33.

The trial proceeded, but without Bryan's testimony
the evidence against Anderson on the Mount Ivy rob-
bery was such that at the end of the Government's case

---

respondents did not seek review of that conclusion. Thus no issue
concerning the scope of immunity is before us.

[4] Earlier in the proceeding counsel had requested a continuance to
study whether respondents could be compelled to testify after a
grant of immunity. App. 5. The trial judge did not allow a con-
tinuance. *Id.,* at 6. The Court of Appeals, however, considered that
for purposes of appeal the request was sufficient objection to the
summary contempt citation. The Government does not contest
that ruling so we do not address it.

the judge granted Anderson's motion for acquittal. The jury was unable to reach a verdict on the Tuxedo robbery. At a later trial Anderson was convicted of that robbery.

Respondents appealed their contempt convictions. The Court of Appeals rejected the claim that their Fifth Amendment rights would have been violated by compelling them to testify after they had been granted immunity, but it accepted their contention that use of the summary contempt power was improper, and it remanded for proceedings under Rule 42 (b). 488 F. 2d 1231 (CA2 1973). The court reasoned that "[i]f . . . counsel had been given 'a reasonable time for the preparation of the defense,' Fed. R. Crim P. Rule 42 (b), she might have marshalled and presented facts in mitigation of the charge." *Id.,* at 1234.[5]

In requiring Rule 42 (b) disposition the Court of

---

[5] For example, the court mentioned that respondent Wilson's experience suggested the possibility of a psychiatric defense. With time to prepare, the Court of Appeals said, counsel might have "enlarged on the issue of [Wilson's] mental health, and perhaps shown a relationship between any psychological difficulties and the refusal to serve as a witness." 488 F. 2d, at 1234–1235. The record does not support such a defense. On order of the District Court, Wilson had been given a psychiatric examination to determine his competency to stand trial. 18 U. S. C. § 4244. He was found competent; however, at the Anderson trial his lawyer argued that the examination revealed family difficulties that may have been a reason for his antisocial behavior. App. 12–13. The District Court agreed that further investigation of Wilson's psychiatric problems might be helpful for *sentencing* purposes. *Id.,* at 12, 17. The record does not show that either counsel or the District Court considered for a moment that further psychiatric investigation might provide a defense to the contempt charge. The psychiatric investigation was to determine whether Wilson might more appropriately be placed on probation with psychiatric treatment rather than confined in a prison. *Id.,* at 13, 17.

Appeals considered itself bound by its own previous decisions, and by this Court's decision in *Harris* v. *United States,* 382 U. S. 162 (1965). In a previous case the Court of Appeals had held:

> "Summary disposition is thus available only when immediate punishment is necessary to put an end to acts disrupting the proceedings, such as threats to the judge, disturbances in the courtroom or insolence before the court. It is not a remedy to be used in a case like this where the contempt consists of no more than orderly refusal in the absence of the jury to answer a question on Fifth Amendment grounds . . . ." *United States* v. *Pace,* 371 F. 2d 810, 811 (CA2 1967).

In another case the Court of Appeals had interpreted the language of our *Harris* decision to require that "[a]bsent . . . disruptive conduct, which affronts the dignity of the court, a hearing pursuant to Rule 42 (b) is required to explore possible exculpatory or mitigating circumstances." *United States* v. *Marra,* 482 F. 2d 1196, 1200 (CA2 1973). In the Court of Appeals' view only a disorderly or obstreperous interference with court proceedings provides an occasion for use of the summary contempt power. *Id.,* at 1201–1202.

Because of the importance of this issue in the conduct of criminal trials, and because the view of the Court of Appeals for the Second Circuit apparently conflicts with that of the Court of Appeals for the First Circuit, *Baker* v. *Eisenstadt,* 456 F. 2d 382, cert. denied, 409 U. S. 846 (1972), we granted certiorari. 416 U. S. 981 (1974). We reverse.

## II

Respondents' refusals to answer, although not delivered disrespectfully, plainly fall within the express lan-

guage of Rule 42 (a),[6] and constitute contemptuous conduct. Rule 42 (a) was never intended to be limited to situations where a witness uses scurrilous language, or threatens or creates overt physical disorder and thereby disrupts a trial. All that is necessary is that the judge certify that he "saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." Respondents do not contest that these requirements are met here. Indeed, here each refusal was in the context of a face-to-face encounter between the judge and respondents. See *Illinois* v. *Allen,* 397 U. S. 337 (1970); *Cooke* v. *United States,* 267 U. S. 517 (1925).

The refusals were contemptuous of judicial authority because they were intentional obstructions[7] of court

---

[6] Rule 42 applies the contempt power defined in 18 U. S. C. § 401. See *Bessette* v. *W. B. Conkey Co.,* 194 U. S. 324, 326–327 (1904); *Ex parte Robinson,* 19 Wall. 505, 510 (1874). That statute provides that a federal court has the power to punish by fine or imprisonment, at its discretion, such contempt of its authority as "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." The predecessor of the statute was enacted to limit the broad power granted by the Judiciary Act of 1789, 1 Stat. 73. *Nye* v. *United States,* 313 U. S. 33, 45, 50 (1941). Courts had indiscriminately used the summary contempt power to punish persons for acts that occurred far from the court's view and which, in truth, could not be considered direct affronts to its dignity, and obstructions of justice. Thus the phrase "in its presence or so near thereto" was intended to apply a geographical limitation on the power. *Id.,* at 50. Misbehavior actually in the face of the court remained punishable summarily, and this Court made it clear that contemptuous actions "actually interrupting the court in the conduct of its business," *id.,* at 52, were summarily punishable just as "misbehavior in the vicinity of the court disrupting to quiet and order." *Ibid.*

[7] The trial judge explained to respondents the protection accorded by the grant of immunity and that if they continued in their refusals he would hold them in contempt. He also offered them an oppor-

proceedings that literally disrupted the progress of the trial and hence the orderly administration of justice. *Yates* v. *United States,* 227 F. 2d 844 (CA9 1955). Respondents' contumacious silence, after a valid grant of immunity followed by an explicit, unambiguous order to testify, impeded the due course of Anderson's trial perhaps more so than violent conduct in the courtroom. Violent disruptions can be cured swiftly by bodily removing the offender from the courtroom, or by physical restraints, *Illinois* v. *Allen, supra;* see *Ex parte Terry,* 128 U. S. 289 (1888), and the trial may proceed. But as this case demonstrates, a contumacious refusal to answer not only frustrates the inquiry but can destroy a prosecution. Here it was a prosecution; the same kind of contumacious conduct could, in another setting, destroy a defendant's ability to establish a case.

The face-to-face refusal to comply with the court's order itself constituted an affront to the court,[8] and when that kind of refusal disrupts and frustrates an ongoing proceeding, as it did here, summary contempt must be available to vindicate the authority of the court as well as to provide the recalcitrant witness with some incentive to testify. *In re Chiles,* 22 Wall. 157, 168 (1875). Whether such incentive is necessary in a par-

---

tunity to speak in their own behalf. *Groppi* v. *Leslie,* 404 U. S. 496, 501 (1972). Moreover, the judge made it clear that he would consider reducing the sentences if respondents did testify. App. 19–20, 21, 33. In view of this their continued refusals to testify can only be termed intentional.

[8] In order to constitute an affront to the dignity of the court the judge himself need not be personally insulted. Here the judge indicated he was not personally affronted by respondents' actions. He said: "I am not angry at Mr. Wilson because he refuses to testify. That is up to him." App. 14. He also said: "I don't consider [Bryan] to have a chip on his shoulder towards the Court or towards me." *Id.,* at 33.

ticular case is a matter the Rule wisely leaves to the discretion of the trial court.[9]

Our conclusion that summary contempt is available under the circumstances here is supported by the fact that Rule 42 has consistently been recognized to be no more than a restatement of the law existing when the Rule was adopted, *Bloom* v. *Illinois,* 391 U. S. 194, 209 (1968); Notes of the Advisory Committee on Rule 42 (a), 18 U. S. C. App. p. 4513; *Cooke* v. *United States,* 267 U. S. 517 (1925),[10] and the law at that time allowed summary punishment for refusals to testify, *Hale* v. *Henkel,* 201 U. S. 43 (1906); *Nelson* v. *United States,* 201 U. S. 92 (1906); *Blair* v. *United States,* 250 U. S. 273

---

[9] In *Shillitani* v. *United States,* 384 U. S. 364, 371 n. 9 (1966), we said:

"[T]he trial judge [should] first consider the feasibility of coercing testimony through the imposition of civil contempt. The judge should resort to criminal sanctions only after he determines, for good reason, that the civil remedy would be inappropriate."

Here, of course, that admonition carries little weight because at the time they acted contemptuously both respondents were incarcerated due to their own guilty pleas. Under the circumstances here the threat of immediate confinement for civil contempt would have provided little incentive for them to testify. Contrast, *Anglin* v. *Johnston,* 504 F. 2d 1165 (CA7 1974), cert. denied, 420 U. S. 962 (1975). Nevertheless, the careful trial judge made it clear to respondents that if they relented and obeyed his order he would consider reducing their sentences; and he also explained that he would consider other factors in deciding whether to reduce the sentences. *Supra,* at 312.

[10] Sources contemporaneous with the adoption of this Rule uniformly indicate that subsection (a) is substantially a restatement of existing law, 6 N. Y. U. School of Law, Institute Proceedings—Federal Rules of Criminal Procedure 73 (1946); Dession, The New Federal Rules of Criminal Procedure: II, 56 Yale L. J. 197, 244 n. 268 (1947); Orfield, Federal Rules of Criminal Procedure, 26 Neb. L. Rev. 570, 613 n. 189 (1947), and was not intended to alter the circumstances in which notice and a hearing are required.

(1919). See *Ex parte Hudgings*, 249 U. S. 378, 382 (1919); *Brown* v. *Walker*, 161 U. S. 591 (1896), and cases cited therein, cf. *Ex parte Kearney*, 7 Wheat. 38 (1822); *In re Savin*, 131 U. S. 267 (1889).

### III

The Court of Appeals considered itself bound by language in *Harris* v. *United States*, 382 U. S. 162 (1965), to hold Rule 42 (a) inapplicable to the facts here. The crucial difference between the cases, however, is that *Harris* did not deal with a refusal to testify which obstructed an ongoing trial. In *Harris* a witness before a grand jury had been granted immunity, 18 U. S. C. § 6002, and nevertheless refused to answer certain questions. The witness was then brought before a District Judge and asked the same questions again. When he still refused to answer, the court summarily held him in contempt. We held in that case that summary contempt was inappropriate because there was no compelling reason for an immediate remedy.

A grand jury ordinarily deals with many inquiries and cases at one time, and it can rather easily suspend action on any one, and turn to another while proceedings under Rule 42 (b) are completed. We noted in *Harris* that "swiftness was not a prerequisite of justice . . . . Delay necessary for a hearing would not imperil the grand jury proceedings." 382 U. S., at 164. Trial courts, on the contrary, cannot be expected to dart from case to case on their calendars any time a witness who has been granted immunity decides not to answer questions. In a trial, the court, the parties, witnesses, and jurors are assembled in the expectation that it will proceed as scheduled. Here the District Judge pointed out this problem when defense counsel asked for a continuance; he said: "I think we cannot delay this trial. I cannot delay it. I

have many other matters that are equally important to the people concerned in those cases which are following." [11] Delay under Rule 42 (b) may be substantial, and all essential participants in the trial may no longer be readily available when a trial reconvenes. In *Harris* this Court recognized these problems in noting that summary punishment may be necessary where a "refusal [is] . . . an open, serious threat to orderly procedure." 382 U. S., at 165. A refusal to testify during a trial may be such an open, serious threat, and here it plainly constituted a literal "breakdown" in the prosecution's case.

## IV

In an ongoing trial, with the judge, jurors, counsel, and witnesses all waiting, Rule 42 (a) provides an appropriate remedial tool to discourage witnesses from contumacious refusals to comply with lawful orders essential to prevent a breakdown of the proceedings. Where time is not of the essence, however, the provisions of Rule 42 (b) may be more appropriate to deal with contemptuous conduct. We adhere to the principle that only "'[t]he least possible power adequate to the end proposed'" should be used in contempt cases. *Anderson* v. *Dunn*, 6 Wheat. 204, 231 (1821). See *Taylor* v. *Hayes*, 418 U. S. 488, 498 (1974). As with all power, the authority under Rule 42 (a) to punish summarily can be abused; the courts of appeals, however, can deal with abuses of discretion without restricting the Rule in contradiction of its express terms, and without unduly limiting the power of the trial judge to act swiftly and firmly to prevent contumacious conduct from disrupting the orderly progress of a criminal trial.

*Reversed.*

---

[11] App. 6.

MR. JUSTICE BLACKMUN, with whom MR. JUSTICE REHNQUIST joins, concurring.

In *Brown* v. *United States,* 359 U. S. 41 (1959), the petitioner had refused, on Fifth Amendment grounds, to answer questions put to him by a federal grand jury. He thereafter was immunized by the District Judge but, on returning to the grand jury room, persisted in his refusal to answer questions. He again was taken before the District Judge, who repeated the grand jury's questions and ordered the petitioner to answer. He again refused. The court then, pursuant to Fed. Rule Crim. Proc. 42 (a), adjudged him guilty of criminal contempt. This Court, by a 5–4 vote, sustained the judgment, and expressly approved the use of summary proceedings; it did so on the ground that the refusal to answer before the District Judge was a contempt "committed in the actual presence of the court," within the meaning of Rule 42 (a). 359 U. S., at 47–52.

Less than seven years later, in *Harris* v. *United States,* 382 U. S. 162 (1965), the Court, with two new Justices, was confronted with a factual situation identical in all relevant respects to that in *Brown.* In *Harris,* however, the Court, again by a 5–4 vote, concluded that the witness' refusal to answer the questions before the District Judge was not a contempt "committed in the actual presence of the court." It reasoned:

> "The real contempt, if such there was, was contempt before the grand jury—the refusal to answer to it when directed by the court. Swearing the witness and repeating the questions before the judge was an effort to have the refusal to testify 'committed in the actual presence of the court' for the purposes of Rule 42 (a). It served no other purpose, for the witness had been adamant and had made his position known. The appearance before the District Court was not a new and different pro-

ceeding, unrelated to the other. It was ancillary to the grand jury hearing and designed as an aid to it." 382 U. S., at 164–165.

The Court then expressly overruled *Brown*. *Id.*, at 167.

I was not on the Court when *Brown* and *Harris* were decided. Had I been, I would have joined the Court in *Brown* and the dissenters in *Harris*. Although I join the Court's opinion today, I write separately to express my conviction that *Harris,* at the most, now stands for nothing more than the proposition that a witness' refusal to answer grand jury questions is not conduct "in the actual presence of the court," even when the questions are restated by the district judge and the witness persists in his refusal to answer.[1]

Summary contempt, especially summary criminal contempt, as the Court indicates, *ante,* at 319, is not a power lightly to be exercised.[2] Nevertheless, summary criminal contempt is a necessary and legitimate part of a court's arsenal of weapons to prevent obstruction, violent or otherwise, of its proceedings. It is not seriously disputed that a refusal to testify is punishable as a criminal contempt. So long as this Court holds, as it has, that the

---

[1] The Solicitor General has invited the Court in this case to overrule *Harris*. Brief for United States 24. Since the refusal to testify, involved here, occurred during the course of a trial rather than before a grand jury, I agree with the Court's tacit conclusion to save the question of overruling *Harris* for another day.

[2] Although the use of civil contempt, as opposed to the more drastic criminal contempt, is usually to be preferred as a remedy, I am aware of no requirement that the less drastic sanction must be employed in all cases. Indeed, despite the fact that respondents were already incarcerated for substantive criminal offenses, it appears to be clear that service of their sentences could have been interrupted to compel them to serve an intervening sentence for contempt. See, *e. g., United States* v. *Liddy,* 166 U. S. App. D. C. 289, 510 F. 2d 669 (1974), cert. denied, 420 U. S. 980 (1975); *Anglin* v. *Johnston,* 504 F. 2d 1165 (CA7 1974), cert. denied, 420 U. S. 962 (1975).

summary procedure of Rule 42 (a) satisfies the requirements of due process, the Rule should be read to mean precisely what it says.

Mr. Justice Brennan, with whom Mr. Justice Douglas and Mr. Justice Marshall join, dissenting.·

The question for decision in this case is one of procedure: is the criminal contempt of nonviolently and respectfully refusing to testify at a criminal trial punishable summarily by the trial judge pursuant to Fed. Rule Crim. Proc. 42 (a), or must the trial judge prosecute the contempt on notice pursuant to Rule 42(b), allowing a reasonable time for the preparation of the defense?[1]   A trial judge in the District

---

[1] Rule 42 (a) provides:

"(a) Summary Disposition.

"A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court.   The order of contempt shall recite the facts and shall be signed by the judge and entered of record."

Rule 42 (b) provides:

"(b) Disposition Upon Notice and Hearing.

"A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice.   The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such.   The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest.   The defendant is entitled to a trial by jury in any case in which an act of Congress so provides.   He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent.   Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

Court for the Southern District of New York summarily punished respondents under subdivision (a) of Rule 42 for refusing to testify at a trial. The Court of Appeals for the Second Circuit reversed and remanded on the ground that *Harris* v. *United States,* 382 U. S. 162 (1965), and the Court of Appeals' own prior decision in *United States* v. *Marra,* 482 F. 2d 1196 (1973), which had relied upon *Harris,* compelled the conclusion that the proper course was to prosecute on notice under subdivision (b) of the Rule. 488 F. 2d 1231 (1973). I would affirm the judgment of the Court of Appeals.

One Anderson was on trial in the District Court on March 29, 1973, under an indictment for armed robbery of two banks, one in Tuxedo, N. Y., and the other in Mount Ivy, N. Y. Before the trial respondent Wilson pleaded guilty to participation in the Tuxedo bank robbery and respondent Bryan pleaded guilty to participation in the Mount Ivy bank robbery. Neither respondent had been finally sentenced on his plea, however,[2] and each refused to testify against Anderson on self-incrimination grounds, and persisted in that refusal even though the trial judge granted him immunity under 18 U. S. C. §§ 6002–6003.[3] The trial judge thereupon

---

[2] The trial judge who presided at Anderson's trial had deferred sentencing respondent Wilson. Another trial judge, who had been assigned respondent Bryan's indictment, had imposed a provisional 25-year sentence pending an evaluation under 18 U. S. C. § 4208 (b).

After Anderson's trial, Wilson was committed as a young adult offender for an indeterminate term pursuant to 18 U. S. C. § 5010 (b), while Bryan's sentence was reduced to 10 years.

[3] When the privilege was invoked, Wilson's counsel was present and, in the absence of Bryan's counsel, attempted with the court's approval to represent both witnesses.

Sections 6002–6003 provide:

"§ 6002. Immunity generally.

"Whenever a witness refuses, on the basis of his privilege against

summarily adjudged each in criminal contempt and sentenced each to six months' imprisonment to be served consecutively to his sentence on the robbery conviction.[4]

---

self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

"(1) a court or grand jury of the United States,

"(2) an agency of the United States, or

"(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

"and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order. "§ 6003. Court and grand jury proceedings.

"(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

"(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

"(1) the testimony or other information from such individual may be necessary to the public interest; and

"(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

[4] The contempt sentences were provisional and stayed pending appeal. The Court of Appeals rejected the Government's contention

The Court today declines the Government's invitation to overrule *Harris* v. *United States, supra,* and in that circumstance. *Harris* clearly compels affirmance of the judgment of the Court of Appeals. *Harris* interpreted subdivision (a) of Rule 42 as having a narrowly limited scope and expressly excluded its application to a non-violent, respectful refusal to answer questions on the ground of self-incrimination.[5] The Court emphasized

that the witnesses had not adequately objected to the use of summary contempt procedures:

"[U]nder the circumstances, the request by counsel for Wilson for more time to research the fifth amendment issue constituted sufficient objection. And we refuse to penalize appellant Bryan for his failure to make timely objection to the Rule 42 (a) proceeding, since his own counsel was not present. Although counsel for Wilson did her best to protect Bryan, the court having sanctioned her efforts in this regard, only a defendant's own lawyer could be fully aware of the considerations which might be raised in his behalf to mitigate a charge of contempt or the sentence thereunder, and of the likely usefulness of a hearing for development of these considerations." 488 F. 2d 1231, 1234 (CA2 1973).

At the close of the Government's case, the trial judge granted Anderson's motion for a judgment of acquittal on the Mount Ivy robbery. The jury was unable to reach a verdict on the Tuxedo robbery. At a second trial, Anderson was convicted of the Tuxedo robbery.

[5] Respondents' self-incrimination claim was based upon a concern that their testimony might prejudice their sentencing. The merits of the claim are not before us. The Court of Appeals rejected respondents' contention that the immunity given was not coextensive with the privilege against self-incrimination on the ground that neither respondent had properly raised the issue of "forbidden use":

"If appellant Wilson doubted the ability of Judge Lasker to put out of his mind Wilson's statements at Anderson's trial, he should nevertheless have testified as ordered, but requested a different judge for sentencing on the robbery charge. Cf. Goldberg v. United States, 472 F. 2d 513, 516 (2d Cir. 1973). Similarly, if Bryan genuinely feared an increased sentence on his guilty plea as a result of testifying in the *Anderson* case, he, too, should have given evidence, then asked

that subdivision (a) reached a narrow category of situations and "was reserved 'for exceptional circumstances' . . . such as acts threatening the judge or disrupting a hearing or obstructing court proceedings." 382 U. S., at 164. Such acts, the Court held, are not present in the case of a nonviolent, respectful refusal to answer questions on the ground of self-incrimination because in such a case "the dignity of the court was not being affronted: no disturbance had to be quelled; no insolent tactics had to be stopped." *Id.*, at 165.[6]

The Court stated its rationale for the narrow interpretation of subdivision (a) as follows:

"We reach that conclusion in light of 'the concern long demonstrated by both Congress and this Court over the possible abuse of the contempt power' . . . and in light of the wording of the Rule. Summary contempt is for 'misbehavior' . . . in the 'actual presence of the court.' Then speedy punishment may be necessary in order to achieve 'summary vindication of the court's dignity and authority.'" *Id.*, at 164.

The Court continued:

"Summary procedure, to use the words of Chief Justice Taft, was designed to fill 'the need for immediate penal vindication of the dignity of the

---

that proper precautions be taken (e. g., sealing the record) to insure that Judge Cooper would not be privy to the statements made under grant of immunity. Both were, however, required to obey the mandate of 18 U. S. C. § 6002 that 'the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination . . . .'" 488 F. 2d, at 1233.

[6] *Harris* overruled the broader reach given subdivision (a) in *Brown* v. *United States,* 359 U. S. 41 (1959). This was believed necessary to achieve the objective of its framers that the subdivision be "'substantially a restatement of existing law.'" 382 U. S., at 165 n. 3.

court . . . .' We start from the premise long ago stated in *Anderson* v. *Dunn*, 6 Wheat. 204, 231, that the limits of the power to punish for contempt are '[t]he least possible power adequate to the end proposed.' In the instant case, the dignity of the court was not being affronted: no disturbance had to be quelled; no insolent tactics had to be stopped. The contempt here committed was far outside the narrow category envisioned by Rule 42 (a)." *Id.*, at 165.

Only last Term, the Court again emphasized that summary punishment for contempt " 'always and rightly, is regarded with disfavor' " in light of the "heightened potential for abuse posed by the contempt power," *Taylor* v. *Hayes*, 418 U. S. 488, 498, 500 (1974), and is to be resorted to only when necessary for " 'immediate penal vindication of the dignity of the court.' " *Id.*, at 498 n. 6.

I see no escape from the application of *Harris* to this case based on the difference that respondents were witnesses at an ongoing trial while the witness in *Harris* was a grand jury witness, brought before the judge and asked the same questions he had not answered before the grand jury. The Court argues that while the delay necessitated by Rule 42 (b) procedures would be unlikely seriously to disrupt grand jury proceedings it would have substantial disruptive effects in a trial. I doubt that compliance with Rule 42 (b) procedures necessarily would have substantial disruptive effects in a trial [7] but in any

---

[7] In *United States* v. *Marra*, 482 F. 2d 1196 (CA2 1973), the Court of Appeals rejected that argument, stating:

"In an uncomplicated case of the present type, where the facts are simple and a brief consultation between the witness and his retained or assigned counsel should be sufficient to enable him to prepare for a Rule 42 (b) hearing, there appears to be no sound reason why the hearing could not be held within a day or two of the witness' refusal to obey the court's order. Since the hearing would in all likelihood require no more than an hour or two of the court's time,

event those effects are not the kind of obstruction of court proceedings, *Harris, supra,* at 164, that justify summary punishment under subdivision (a). For *Harris* limits application of that subdivision to conduct in the presence of the judge "where immediate corrective steps are needed to restore order and maintain the dignity and authority of the court." *Johnson* v. *Mississippi,* 403 U. S. 212, 214 (1971).[8] In the case of respondents' nonviolent, respectful refusal to answer questions on the ground of self-incrimination, "the dignity of the court was not being affronted," [9] *Harris, supra,* at 165, and the absence of that

---

trial of the criminal case could be suspended with a minimum disruption to the judicial process. Such a procedure, furthermore, lessens the risk that the witness' contumacy is the result of fright, confusion, or misunderstanding. Indeed, with the advice of counsel, or faced with imposition of a criminal sentence, he may decide to cooperate." *Id.,* at 1202.

See also *United States* v. *Pace,* 371 F. 2d 810 (CA2 1967).

The Court of Appeals said of the situation in the instant case:

"If . . . counsel had been given 'a reasonable time for the preparation of the defense,' Fed. R. Crim. P. 42 (b), she might have marshalled and presented facts in mitigation of the charge. Significantly, the record reveals the possibility of a psychiatric defense, at least for Wilson [cf. *Panico* v. *United States,* 375 U. S. 29 (1963)]. . . .

"Finally, because of the posture of the case, the record is silent on other facts which may well exist in defense or mitigation of the charge against both appellants, and which could be properly developed at a plenary hearing." 488 F. 2d, at 1234–1235.

The trial judge has broad discretion to specify the time for preparation of a defense to a charge of criminal contempt. See *Nilva* v. *United States,* 352 U. S. 385, 395 (1957).

[8] "[Rule 42 (b)] is controlling in any case of contempt occurring outside the actual presence of the court, but it applies too to most cases of contempt in the court's presence." 3 C. Wright, Federal Practice and Procedure 171–172 (1969).

[9] It is undisputed that respondents asserted their Fifth Amendment rights nonviolently and respectfully. Indeed, the trial judge commented after respondent Bryan asserted the privilege: "I don't

crucial element in respondents' refusal to answer questions foreclosed application of subdivision (a) by the trial judge.

---

consider him to have a chip on his shoulder towards the Court or towards me." App. 32.