ANTOON, Judge.
Devin Gerome Jarrett was adjudged guilty of direct criminal contempt and sentenced to five months and twenty-nine days in the county jail. We reverse because Jarrett’s conduct did not constitute direct criminal contempt.
Jarrett and his codefendants were charged with first degree murder and armed robbery. Jarrett’s case proceeded to trial first, and he was convicted as charged. While Jarrett was awaiting sentencing, the state continued to prepare for trial against his codefendants. As a part of this preparation, the state sub *332 poenaed Jarrett to give testimony. Although Jarrett appeared for the state’s investigatory hearing, he refused to answer questions, contending that he had the constitutional right to remain silent. As a result of his refusal to answer the state’s questions, a second subpoena was issued requiring Jarrett to appear and give testimony before an assistant state attorney. When Jarrett appeared to testify, he was taken before a circuit judge who ordered him to answer the state’s questions. The judge warned Jarrett that, if he refused, the judge would have no alternative but to find him in direct criminal contempt of court pursuant to rule 3.830 of the Florida Rules of Criminal Procedure. Jarrett again refused to testify. The trial judge then found Jarrett to be in direct criminal contempt of court, and sentenced him to five months and twenty-nine days in the county jail. This sentence was ordered to run consecutively to any sentence to be imposed on Jarrett’s murder and robbery convictions.
Although Jarrett argued to the trial judge that he had the constitutional right to refuse to answer the state’s questions, he does not make that argument here. Instead, Jarrett contends the trial judge erred by addressing the issue of contempt as an issue of direct criminal contempt under rule 3.830, arguing that instead this matter should have been characterized as indirect criminal contempt pursuant to rule 3.840. We agree.
It is Jarrett’s position that the direct criminal contempt procedure provided in rule 3.830 may be used only in those rare cases when conduct is of such a nature that it is an affront to the dignity of the court. Jarrett contends that his polite refusal to participate in the state’s investigation did not constitute such conduct. Also, acknowledging that one of the distinctions between direct and indirect criminal contempt is that direct criminal contempt results from conduct which takes place in the presence of the court, Jarrett argues that the trial judge’s presence in this case was contrived by the state, and that due process considerations should not turn on that feature alone.
This ease would be easier to decide if the state’s questions had been propounded during a trial setting because, in that case, the judge could have properly found Jarrett in direct criminal contempt using the procedure set out in rule 3.830 since such refusal to answer the state’s questions would have disrupted or frustrated an ongoing proceeding. The court in Pendley v. State, 392 So.2d 321 (Fla. 1st DCA 1980) emphasizes this distinction.
In that ease, when Pendley refused to answer questions propounded during a grand jury upon court order to do so, the judge found Pendley in direct criminal contempt. On appeal, the first district reversed, concluding that direct criminal contempt was not the proper punishment for the failure to obey instructions of the court to answer questions before the grand jury. In so ruling, the court relied upon the decision in Harris v. United States, 382 U.S. 162, 86 S.Ct. 352, 15 L.Ed.2d 240 (1965) which held that summary direct criminal contempt proceedings should be reserved for exceptional circumstances such as, “acts threatening the judge or disrupting a hearing or obstructing court proceedings.” Harris, 382 U.S. at 164, 86 S.Ct. at 354. In deciding that summary direct criminal contempt was not an appropriate remedy for failing to comply with the court’s instructions to answer questions, the Harris Court pointed out that this act of disobedience was not an affront to the dignity of the court, did not create a disturbance, and was not an insolent tactic. The Court also noted that, unlike in a trial setting, in a grand jury proceeding “swiftness was not a prerequisite of justice,” and the “delay necessary for a hearing would not imperil the grand jury proceedings.” Harris, 382 U.S. at 164, 86 S.Ct. at 354. See also U.S. v. Wilson, 421 U.S. 309, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).
Applying this reasoning to the instant case, Jarrett was not disruptive, insolent, or offensive to the court in refusing to answer the prosecutor’s questions. Moreover, the record does not indicate that there was any urgency in compelling Jarrett’s answers which necessitated the summary contempt procedure. Accordingly, we conclude the contempt proceedings against Jarrett should have been conducted pursuant to rule 3.840.
*333 In closing, we note that Jarrett’s sentence for contempt is illegal because it is error to direct that a sentence commence at the conclusion of a future sentence yet to be announced. Marino v. State, 635 So.2d 1068 (Fla. 5th DCA 1994); Teffeteller v. State, 396 So.2d 1171 (Fla. 5th DCA 1981).
REVERSED.
DAUKSCH and HARRIS, JJ., concur.