IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT NASHVILLE

JENNIFER O. WILSON,

      Plaintiff,

v.

LARRY ARNOLD WILSON,

      Defendant.

Davidson Circuit No. 96D-1850
C.A. No. 01A01-9704-CV-00152

Hon. Muriel Robinson, Judge

**FILED**

**March 20, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

JOHN E. HERBISON, Nashville, Attorney for Plaintiff.

EARL J. PORTER, JR., Nashville, Attorney for Defendant.

*REVERSED AND REMANDED*

Opinion Filed:

**TOMLIN, Sr. J.**

Jennifer O. Wilson ("plaintiff") filed suit for divorce against Larry A. Wilson ("defendant") in the Circuit Court of Davidson County. During the course of this litigation, certain restraining orders were issued by the court. Thereafter, defendant filed a petition against plaintiff for contempt. The petition failed to specify whether civil or criminal sanctions were being sought. Plaintiff filed a counterclaim for contempt against defendant.

Plaintiff filed a motion to disqualify private counsel from prosecuting the petition for criminal contempt, noting that it was the same counsel who was representing defendant in the divorce proceedings. The trial court denied the motion to disqualify, granted defendant permission to seek an interlocutory appeal of that ruling and stayed proceedings on the pending contempt petitions of both plaintiff and defendant.

The defendant subsequently filed another petition for contempt, upon which a show cause order was issued. Plaintiff once again filed a motion to disqualify private counsel from prosecuting the criminal contempt action. The trial court denied this motion and entered an order granting a Rule 10 T.R.A.P. extraordinary appeal. This court thereafter entered an order granting a Rule 9 T.R.A.P. interlocutory appeal relative to the trial court's initial order denying plaintiff's motion to disqualify private counsel and shortly thereafter granted a Rule 10 T.R.A.P. extraordinary appeal from the trial court's denial of the plaintiff's second motion to disqualify private counsel. The Rule 10 appeal was by order consolidated with the previously granted Rule

9 appeal.

The sole issue in this consolidated appeal is whether or not a lawyer representing one party in a civil proceeding may be appointed and serve as the prosecutor of a petition for criminal contempt against the other party, based upon conduct arising out of the civil proceeding. For the reasons hereinafter stated, we hold that such an appointment of an "interested" special prosecutor in a criminal contempt proceeding is contrary to the ethical standards required of lawyers in the practice of law, as well as the high ethical standard required of the judicial process and is thereby prohibited. Other than the procedural facts as set out above, the underlying facts in this case pertaining to the divorce and the conduct of the parties are really not material to the consideration of this issue. Our scope of review is *de novo* with no presumption of correctness. City of Tullahoma v. Bedford County, 938 S.W.2d 408, 412 (Tenn. 1997).

The propriety of using private lawyers to prosecute criminal contempt cases has not been addressed as yet by our supreme court. However, it has been addressed in part recently by the Middle Section of this court in a case styled Woodside v. Woodside, No. 01-A-01-9503-PB00121, 1995 WL 623077 (Tenn. Ct. App. Oct. 25, 1995), *perm. app. denied, concurring in results only*, Jan. 8, 1996. In addition, the use of private attorneys as special prosecutors to assist the District Attorney General in the prosecution of criminal defendants has been addressed twice in recent years by our brothers on the Court of Criminal Appeals. The first of these two cases is State v. Bennett, 798 S.W.2d 783 (Tenn. Crim. App. 1990), followed by State v. Eldridge, 951 S.W.2d 775 (Tenn. Crim. App. 1997). These three Tennessee cases, along with the well-written analytical opinion from the U.S. Supreme Court styled Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), provide us with compelling persuasive authority why this court in this case should hold that henceforth private attorneys who represent a party that is a beneficiary of a court order may not be appointed as special prosecutor in a contempt action alleging a violation of that order.

We believe that it will be helpful to examine the two distinct approaches that characterize the way that various state and federal courts have analyzed and evaluated the issue of interested prosecutors. While the approaches are different, the results reached in each approach and some of the rationale utilized therein are influential in deciding the case here under consideration. We have chosen to call them (1) the due process approach and (2) the ethical approach.

2

Following the due process approach, a court would hold that the appointment of a private attorney as special prosecutor in a criminal proceeding who has an interest in a case other than the interest of justice, would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution and/or the Law of the Land Clause in Article I, section 8 of the Tennessee Constitution. This approach would assert that the appointment of a private prosecutor in a criminal proceeding arising out of a civil proceeding where the appointed attorney also represented one of the civil litigants is a *per se* violation of the due process rights of the criminal defendant.

A pivotal case in this approach is State v. Bennett, 798 S.W.2d 783 (Tenn. Crim. App. 1990). The Bennett court held that T.C.A. § 8-7-401 (Supp. 1997), the Tennessee statute authorizing the appointment of special prosecutors, did not violate either the United States Constitution or the Tennessee Constitution. While upholding the constitutionality of the statute, the Bennett court went further and examined the action of the special prosecutors to determine whether their actions as such resulted in the deprivation of a constitutional right of the defendant. Among the four areas the court looked at, it noted two areas of conduct that are relevant to the case at bar: first, the special prosecutors therein did not represent the family of the victim in a civil case arising out of the occurrence which gave rise to criminal prosecution and second, the proceeding in Bennett was not a contempt proceeding which arose out of a civil prosecution. So although neither scenario occurred in Bennett, the court expressed in *dicta* that either of these two scenarios would have been a violation of due process.

The case of State v. Eldridge, 951 S.W.2d 775 (Tenn. Crim. App. 1997), wherein the pivotal facts are quite similar to the facts of the case at bar, involved a criminal prosecution rather than a contempt proceeding arising out of a civil case. The defendant in Eldridge had been indicted for attempted second degree murder. As permitted by the aforementioned statute, the victim's private attorneys had been employed as special prosecutors. Some seven months prior to the criminal trial, these same private attorneys filed a civil suit on behalf of the victim against defendant, seeking $1,000,000 in compensatory damages and $2,000,000 in punitive damages, for injuries arising from the same incident being prosecuted in the criminal case. With the exception of the rebuttal argument, which was made by the Assistant District Attorney General, the special prosecutors handled the entire prosecution.

3

In an excellent opinion, Judge Joe Riley reviewed among other things how Tennessee and other jurisdictions handled private prosecutions of criminal matters. The court acknowledged the forceful impact of the analysis of the conflicts inherent in the use of special prosecutors as set forth in Young v. United States, *supra*. The court reviewed the ethical dilemmas which arose out of those conflicts of interest and considered the due process implications as well. While acknowledging Bennett and its holding on the due process issue, the Eldridge court noted that an analysis of the activities of the special prosecutors in its case therein revealed a due process violation had occurred, distinguishing Eldridge from Bennett. The Eldridge court concluded that defendant's rights under both the U.S. and Tennessee Constitutions had been violated. The desirability of following the due process approach grows stronger as the potential punishment for the crime being prosecuted by the interested special prosecutor grows more severe. The need for constitutional safeguards such as the right to a jury trial, etc., increases in proportion to the jeopardy being placed upon the rights of a criminal defendant. Therefore, when a criminal offense carries potentially severe punishment, it is clear that the due process approach would be the more logical to follow. Accordingly, both Eldridge and Bennett involved the prosecution of a much more serious charge than that of criminal contempt in a civil proceeding.

However, the utilization of the due process approach in criminal contempt proceedings is less desirable in the light of the quasi-criminal status of contempt in this state. See State v. Sammons, 656 S.W.2d 862, 867 (Tenn. Crim. App. 1982). The Sammons court distinguished this state's criminal contempt offense from the "serious contempt" referred to by the United States Supreme Court in Bloom v. Illinois, 391 U.S. 194, 197, 88 S.Ct. 1477, 1479, 20 L.Ed.2d 522, 526 (1968). In the federal system, the punishment for criminal contempt is left to the discretion of the trial judge, who can levy fines and order incarceration for well over one year. 18 U.S.C. § 401(3)(1966). Given the potential severity of the punishment for criminal contempt in the federal system, it is clear that the safeguards of the due process approach should apply.

The Sammons court noted that, contrary to the safeguards in the federal system, a defendant in a criminal contempt action in this state is not afforded a jury trial. Sammons, 656 S.W.2d at 867. Furthermore, a criminal contempt proceeding is not even considered a criminal prosecution. Id. Because of its minor nature, criminal contempt in Tennessee has a statutory maximum fine of fifty ($50) dollars and ten (10) days imprisonment which may be ordered in

circumstances other than nonpayment of child support. T.C.A. § 29-9-103 (Supp. 1997). It could well be contended that the punishment for criminal contempt in this state has not been considered of such significance or severity so as to warrant the safeguards inherent in the due process approach. To invoke either the U.S. or State Constitution in settling this issue strikes with more hammer than needed to drive the nail. The due process approach presents inherent complications which are better avoided if a firm path around them may be found. We think it unwise and unnecessary to enter this quagmire, and adopt a course equally sound and effective.

In our opinion, the adoption of the ethical approach places our decision on firm legal grounds. The ethical approach involves our consideration of the ethical standards that guide the conduct of both practicing attorneys and judges. Utilizing this approach, our Code of Professional Responsibility serves as a beginning point for prohibiting the appointment of interested special prosecutors. The aforementioned case of Woodside v. Woodside, No. 01-A-01-9503-PB00121, 1995 WL 623077 (Tenn. Ct. App. Oct. 25, 1995), *perm. app. denied, concurring in results only*, Jan. 8, 1996, is the only case emanating from the civil side that has dealt with this issue. In a post-divorce proceeding to increase and enforce child support, the trial court appointed the attorney for wife as special prosecutor to prosecute a criminal contempt action against husband, resulting in the court finding husband guilty of willful contempt, awarding wife a judgment for arrears in child support and committing husband to the county workhouse for six months.

The sole issue presented by husband on appeal to the middle section of this court was whether the trial court abused its discretion in allowing an interested special prosecutor to prosecute the criminal contempt proceeding, contending that it was in violation of the principle set forth in Young v. United States, supra. The Woodside court quoted extensively from Young. The court concluded that it did not consider Young to be binding upon the courts of Tennessee, declaring that it would not be followed. The judgment of the lower court was affirmed, but not in the usual sense. In a thorough and well-reasoned concurring opinion, Judge William C. Koch, Jr. concurred in the result of the majority opinion, but only for the reason that the appellant waived his right to raise the issue before the appellate court by failing to timely make a demand for another prosecutor in the trial court. Judge Koch also voiced the opinion that the majority opinion reflected an "unduly narrow view of our responsibility and is inconsistent with our other decisions." In an illuminating overview of Young, Koch noted that the majority in Young rested

5

its decision on the American Bar Association's Model Code of Professional Responsibility (1969, revised 1980). He further noted that the Tennessee Supreme Court had adopted the very same code, and that it currently governs the conduct of all attorneys in this state. See Tenn.S.Ct.R. 8.

In Woodside, Judge Koch outlined the relative responsibility of the courts of this state, and more explicitly the appellate courts, in exercising supervisory power over the trial courts. He stated:

> The Tennessee State Supreme Court was exercising its inherent judicial power when it promulgated the Tenn.S.Ct.R. 8 in 1981. The Code of Professional Conduct in Tenn.S.Ct.R. 8 provides the bench and bar with a guide to a lawyer's obligations to his or her client under various circumstances. The Code's disciplinary rules are mandatory, and the ethical considerations are aspirational and represent the objectives toward which every lawyer should strive. Tenn.S.Ct.R. 8, Preliminary Statement.
>
> Even though the Tennessee Supreme Court has the exclusive prerogative to promulgate rules governing the practice of law, all the courts have the power and duty to apply these rules in appropriate circumstances. The intermediate appellate courts have frequently based their decisions on the Code of Professional Responsibility. Accordingly, this court has relied on portions of Tenn.S.Ct.R. 8 to resolve disputes....
> Id. at **7 (Citations omitted).

Judge Koch concluded that inasmuch as Mr. Woodside and his lawyer were aware from the outset of the trial that the former Mrs. Woodside's lawyer would be prosecuting the criminal contempt charges against him, and raised no objection about this arrangement until the trial was finished and the judgment rendered, that Mr. Woodside had waived his right to take issue with the use of the former Mrs. Woodside's lawyer to prosecute the criminal contempt case against him. While affirming the results of the trial court, Judge Koch concluded that rather than turn judicial backs to the rationale in Young he would leave the question of the propriety of using lawyers for interested parties to prosecute criminal contempt cases for another day. We are of the opinion that that day has come.

A closer and more thorough examination of Young without question provides the justification for this court's ruling. The basic facts in Young are not too dissimilar from the facts in the case under consideration. The suit in Young was brought by two defendants, who in settling a suit against them agreed to the entry of a permanent injunction prohibiting them from infringing certain trademarks of a leather goods manufacturer. Subsequently, the manufacturer's

6

attorneys submitted an affidavit as a result of which the district court found probable cause that these earlier defendants could be in violation of the injunction. The court granted the request of manufacturer's attorneys for their appointment as special counsel to represent the Government in the investigation and prosecution of a criminal contempt action against these two parties. The court of appeals affirmed, rejecting the contention that the appointment of manufacturer's attorneys as special counsel violated their right to be prosecuted by an impartial prosecutor. The supreme court reversed, with the majority opinion basing the reversal on that court's authority to supervise the operation of the courts in the federal system, relying upon the provisions of the Code of Professional Responsibility, as promulgated by the American Bar Association, which had been adopted in 1982.

Because of the relevance of the analysis by the <u>Young</u> majority, we quote at length from the majority opinion:

> ...contempt power "has been uniformly held to be necessary to the protection of the court from insults and oppressions while in the ordinary course of its duties, *and* to enable it to enforce its judgments and orders necessary to the due administration of law and the protection of the rights of suitors." (emphasis in original) (citation omitted).
>
> . . . .
>
> While a court has the authority to initiate a prosecution for criminal contempt, its exercise of that authority must be restrained by the principle that "only [t]he least possible power adequate to the end proposed' should be used in contempt cases." *United States v. Wilson*, 421 U.S. 309, 319, 95 S.Ct. 1802, 1808, 44 L.Ed.2d 186 (1975) (quoting *Anderson v. Dunn*, 6 Wheat., at 231).
>
> . . . .
>
> This distinctive role of the prosecutor is expressed in Ethical Consideration (EC) 7-13 of Canon 7 of the American Bar Association (ABA) Model Code of Professional Responsibility (1982): "The responsibility of a public prosecutor differs from that of the usual advocate; his duty is to seek justice, not merely to convict."
>
> . . . .
>
> Private attorneys appointed to prosecute a criminal contempt action represent the United States, not the party that is the beneficiary of the court order allegedly violated. . . . The prosecutor is appointed solely to pursue the public interest in vindication of the court's authority. A private attorney appointed to prosecute a criminal contempt therefore certainly should be as disinterested as a public prosecutor who undertakes such a prosecution. (footnote omitted).
>
> If a Justice Department attorney pursued a contempt prosecution for violation of an injunction benefiting any client of that attorney involved in the underlying civil

7

litigation, that attorney would be open to a charge of committing a felony under § 208(a). Furthermore, such conduct would violate the ABA ethical provisions, since the attorney could not discharge the obligation of undivided loyalty to both clients where both have a direct interest. The Government's interest is in dispassionate assessment of the propriety of criminal charges for affronts to the Judiciary. The private party's interest is in obtaining the benefits of the court's order. While these concerns sometimes may be congruent, sometimes they may not. A prosecutor may be tempted to bring a tenuously supported prosecution if such a course promises financial or legal rewards for the private client. Conversely, a prosecutor may be tempted to abandon a meritorious prosecution if a settlement providing benefits to the private client is conditioned on a recommendation against criminal charges.

Regardless of whether the appointment of private counsel in this case resulted in any prosecutorial impropriety (an issue on which we express no opinion), that appointment illustrates the *potential* for private interest to influence the discharge of public duty. (Emphasis in original) (footnote omitted).

. . . .

A prosecutor exercises considerable discretion in matters such as the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be charged with what offenses, which persons should be utilized as witnesses, whether to enter into plea bargains and the terms on which they will be established, and whether any individuals should be granted immunity. These decisions, critical to the conduct of a prosecution, are all made outside the supervision of the court.

The requirement of a disinterested prosecutor is consistent with our recognition that prosecutors may not necessarily be held to as stringent a standard of disinterest as judges. "In an adversary system, [prosecutors] are necessarily permitted to be zealous in their enforcement of the law," *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248, 100 S.Ct. 1610, 1616, 64 L.Ed.2d 182 (1980).

. . . .

In a case where a prosecutor represents an interested party, however, the ethics of the legal profession *require* that an interest other than the Government's be taken into account. Given this inherent conflict in roles, there is no need to speculate whether the prosecutor will be subject to extraneous influence. (emphasis in original) (footnote omitted).

. . . .

Between the private life of the citizen and the public glare of criminal accusation stands the prosecutor. That state official has the power to employ the full machinery of the state in scrutinizing any given individual. Even if a defendant is ultimately acquitted, forced immersion in criminal investigation and adjudication is a wrenching disruption of everyday life. For this reason, we must have assurance that those who would wield this power will be guided solely by their sense of public responsibility for the attainment of justice. A prosecutor of a contempt action who represents the private beneficiary of the court order allegedly violated cannot provide such assurance, for such an attorney is required by the very standards of the profession to serve two masters.

Having established that the same Code of Professional Responsibility relied upon by the

8

Young court governs the practice of law in this state, we are of the opinion that the conflicts of interest and temptations, as outlined in Young, that are faced by an interested prosecutor, are not so remote as to believe that they are unlikely to occur in this state if the practice of appointing interested special prosecutors continues. This case is an appropriate one to render such an opinion, inasmuch as we approach the issue prospectively, for the defendant in this case has filed not one, but two petitions seeking to have the interested special prosecutor removed and a disinterested special prosecutor appointed.

As a further consideration, in dealing with the issue of appointing interested special prosecutors we should also recognize the existence and effect of judicial canons that govern the conduct of judges. We perceive that for at least two reasons the judicial canons are relevant to this issue. First of all, judges must "strive to enhance and maintain confidence in our legal system," Tenn.S.Ct.R. 10, Preamble, and secondly, because the appointing judge has the responsibility to "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Tenn.S.Ct.R. 10, Canon 2.

At the heart of the issue of whether an interested prosecutor should be appointed is the fact that all appointments are controlled by the trial judge. Therefore, if public confidence is undermined by the appointment of a special prosecutor with conflicting interests, the judge is under an ethical obligation to refrain from making such an appointment. This would be true even if the judge considered the attorney to be able to properly handle the competing interests. As the Young court stated, "the appointment of counsel for an interested party to bring the contempt prosecution in this case at a minimum created *opportunities* for conflicts to arise, and created at least the *appearance* of impropriety." Young, 481 U.S. at 806, (emphasis in original)[1] (footnote omitted). The appointment of an interested special prosecutor presents the public with the appearance of impropriety. As such, we deem the appointment as contrary to the appearance of integrity and impartiality which the judiciary must strive to maintain.

The primary interest served by the appointment of opposing counsel as special prosecutor is that of judicial economy. Because the other attorney is already familiar with the facts of the case

---

[1] Tennessee has a reported case where the private prosecutor allegedly used the threat of criminal contempt charges to attempt to coerce a civil settlement. See State v. Eldridge, 951 S.W.2d 775, 783 (Tenn. Crim. App. 1997).

and the conduct on which the contempt charge is based, the proceedings do not have to be suspended until an outside attorney is "brought up to speed" on the case. Again, the language from Young is helpful:

> The potential for misconduct that is created by the appointment of an interested prosecutor is not outweighed by the fact that counsel for the beneficiary of the court order may often be most familiar with the allegedly contumacious conduct. That familiarity may be put to use in *assisting* a disinterested prosecutor in pursuing the contempt action, but cannot justify permitting counsel for the private party to be in control of the prosecution.
> Id. at n.17 (emphasis in original).

The interest of judicial economy should not be placed above the interest of judicial integrity. Other jurisdictions have taken a similar stance against the appointment of interested special prosecutors for ethical reasons. See Department of Soc. Serv. v. Montero, 758 P.2d 690, 693 (Haw. Ct. App. 1988), State ex rel. Koppers v. International Union of Oil, Chem. & Atomic Workers, 298 S.E.2d 827, 830 (W. Va. 1982). We are aware of only two twentieth century cases holding unequivocally that a private prosecutor who also represents plaintiffs in a civil action arising out of the same proceeding presents no inherent due process or ethical problems. Hopkins v. State, 429 So.2d 1146, 1154 (Ala. Crim. App. 1983); Marcisz v. Marcisz, 357 N.E.2d 477 (Ill. 1976).

In sum, we hold that counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a criminal contempt action alleging a violation of that order. The judgment of the trial court below denying plaintiff's petition to disqualify private counsel is reversed. This cause is remanded to the trial court for further

proceedings not inconsistent with this opinion. Costs in this cause on appeal are taxed to defendant for which execution may issue if necessary.

_____

TOMLIN, SR. J.

_____

10

CRAWFORD, P.J. W.S.       (CONCURS)

_____

FARMER, J.       (CONCURS)