# In the
# United States Court of Appeals
## For the Seventh Circuit

---

No. 04-4212

IN RE ERIC D. TROUTT,

*Respondent-Appellant*,

---

Appeal from the United States District Court
for the Southern District of Illinois.
No. 04-mc-0029-MJR—**Michael J. Reagan**, *Judge*.

---

ARGUED OCTOBER 27, 2005—DECIDED AUGUST 21, 2006

---

Before RIPPLE, KANNE, and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge.* This appeal concerns the way in which the district court handled what began as an attorney discipline matter. The central actors are Eric D. Troutt, the attorney, and District Judge Michael J. Reagan. Briefly put, Judge Reagan concluded that Troutt had failed to live up to his obligations to the bar of the Southern District of Illinois, and, even worse, had conducted himself in a way that amounted to criminal contempt of court. Troutt has appealed from the district court's order of November 16, 2004, finding him in criminal contempt and suspending him from practicing law in the district court for five years. Although we by no means condone the behavior that Troutt displayed before the district court, we conclude that the procedures the court followed do not pass muster, and we therefore reverse and remand for further proceedings.

**I**

The imbroglio began when, on September 4, 2002, Troutt filed an affidavit of resignation from the bar of the State of Oklahoma, pending disciplinary proceedings that were then before the Oklahoma Supreme Court. That court accepted his resignation and struck his name from its roll of attorneys. Troutt was ineligible to file an application for reinstatement to practice in Oklahoma for a five-year period.

Some months later, in February of 2003, Troutt sought and won admission to practice in the United States District Court for the Southern District of Illinois. On May 18, 2004, however, upon receiving a copy of the Oklahoma Supreme Court's order approving Troutt's resignation from the state bar pending disciplinary proceedings, the district court sent a notice to Troutt pursuant to Local Rule 83.4(c) of the U.S. District Court for the Southern District of Illinois. The notice informed Troutt that he had 30 days in which to inform the court "why the imposition of similar discipline by th[e] Court, consisting of disbarment from practice in this Court, would be unwarranted." On May 24, 2004, Troutt responded in a detailed letter, claiming that he had neither consented to disbarment in Oklahoma nor resigned to avoid discipline. Instead, he asserted, the allegations against him in Oklahoma "were dismissed and never proven" and "no discipline was imposed against him." Accordingly, he argued, because he had "never been disciplined by any Bar," "there [was] no basis for this Court to impose discipline." The judges in the Southern District of Illinois saw matters differently, and in an order dated June 25, 2004, they suspended Troutt from practice in that district.

On July 6, 2004, Troutt filed a motion to alter the June 25 order. His motion largely rehashed the arguments he had made in his original letter about the circumstances surrounding his resignation from the Oklahoma bar. In

response, the court set a status conference for July 30, to address whether it was necessary to have a hearing on Troutt's motion. At the status conference, the court directed Troutt to file an affidavit providing the details about his resignation from the Oklahoma bar, including relevant documents from that proceeding, and it informed Troutt that it would issue a written order upon receipt of this affidavit. Troutt complied, and after reviewing the affidavit and the documents, the court issued an order on August 5 rescinding the earlier order suspending him from practice and directing the clerk to reinstate his name to the roll of attorneys. Importantly for what was to come, the reinstatement order was not an unqualified vindication of Troutt; it included the following critical observations:

> The undersigned Judge consulted with each of the Judges who signed the June 25, 2004 Order suspending Troutt. They accept the undersigned Judge's recommendation that the suspension be lifted. However, in conferring with the other Judges, it became clear that Troutt's performance in the District Court has been less than stellar. Indeed he was more than 30 minutes late for the status conference in the instant case. The Court cautions Troutt that further misconduct may result in imposition of the same discipline this Order vacates, or worse.

Judge Michael J. Reagan, to whom the matter had been assigned randomly, signed this order.

Believing that the August 5 order "disparage[d] [his] character" and "malign[ed] his performance before the court," Troutt filed a "Response to Court Order." His response took exception to the characterization of his work as "less than stellar" and objected that the court had failed to give him notice and an opportunity to respond to its accusations of misconduct. He went on to complain that the whole matter had come about in re-

taliation for his reporting a former law partner, Terry Sharp, for fraudulent billing practices; it was Sharp, Troutt believed, who had sent the Oklahoma court's order to courts all around the country. The next day, Troutt filed a "Motion to Alter or Amend Order," in which he asked the court to strike the last three sentences of its August 5 order and, if the court thought that Troutt had committed misconduct of any kind, to proceed under Local Rule 83.4(d)(1) ("Disciplinary Rule IV—Standards for Professional Conduct"), which assures notice and an opportunity to be heard for an attorney accused of misconduct. Troutt's motion contained harsh language about the court itself, claiming that "rather than following the rules of due process, [the court] takes its secret information and imposes discipline by public reprimand and admonishment without giving Respondent his due process rights under Rule 83.4(d)(1)." He also accused the court of relying on "illusory references to unknown information obtained by 'conferring with other judges.'"

On August 18, Judge Reagan issued a Rule To Show Cause order directing Troutt to explain why the court should not hold him in criminal contempt for his "vitriolic" response to the court's order reinstating him to practice. The court gave three reasons for its order, which we reproduce in full to give a sense of the escalating problem:

> First, the Federal Rules of Civil Procedure provide no procedural vehicle for an attorney who is dissatisfied with a Court Order to excoriate the Judge issuing that Order. In appropriate circumstances, motions may be filed. . . . But lawyers may not engage in mordacious attacks on the Court via diatribes labeled as a "Responses" [sic] to Orders.

> Second, the substantive contents of the Response warrant issuance of a Show Cause Order. Troutt pointedly accuses the undersigned Judge of disparaging his character and maligning his performance. Troutt claims that the Judge has found him guilty of "miscon-

duct" without providing Troutt notice and an opportunity to be heard. In fact, the August 6th Order did no such thing. The Order did mention that other District Judges had expressed concerns regarding Troutt's performance in past cases in this District, and the Order did caution Troutt about being late for Court appearances. But the Order *granted* Troutt's motion and *reinstated* him to the rank of lawyers authorized to practice before this Court.

Third, Troutt's Response not only constitutes an unbridled attack on the undersigned Judge's authority, Troutt also appears to be using this Court's electronic case filing system as a bully pulpit from which to belittle his former business partner, attorney Terry Sharp. The Response accuses Sharp of "fraudulently billing clients . . . for a long time" and snidely quips that Sharp "has had quite the RICO operation going." Troutt then challenges this Court to meet *its* obligation to discipline Sharp "for such gross violations."

(Emphasis in original; footnote omitted.) The order went on to invite Troutt to file a judicial misconduct complaint against the judge with Chief Circuit Judge Flaum, or to report Attorney Sharp to the Illinois Attorney Registration and Disciplinary Commission, if he really thought either step was warranted. Last, it set October 29, 2004, as the date for a hearing at which Troutt was instructed to "appear and show cause why he ought not be held in criminal contempt for filing his August 6, 2004 'Response to Court Order.'"

In response to this order, Troutt faxed Judge Reagan a five-page, *ex parte* letter on August 24, in which he said that he wanted to resolve his dispute with the court informally. The letter began by reviewing the history of his suspension and his complaints about the reinstatement process (where he called the judge "disingenuous" for using his tardiness as

an "excuse" for reprimand), then listed five errors that the court had committed, set forth Troutt's theory about what was really going on, and concluded with "the solution." The tone of the letter degenerates as it goes on. Error No. 1 complains about the fact that the whole matter was on the public record. Error No. 2 accuses the court of "jumping" to conclusions about the Oklahoma order. Error No. 3 begins, "[n]ow being forced to reinstate me, the court was not happy with having to swallow its pride and reinstate me . . . . As a way of getting back at me, the court decided to throw in some dicta which was completely unnecessary and totally unrelated to the purpose of the order." Error No. 4 argues that the court was wrong to treat this as possible criminal contempt, and Error No. 5 essentially accuses the court of favoritism toward Sharp: "Apparently, who gets admonished for using the system to belittle people is dependent upon who you are or whom you are belittling." Troutt's theory of "the whole mess," as he calls it, was that Sharp had orchestrated everything, and that the judges were his cat's paws: "Rather than doing their own bidding, [the judges in] Benton decided to have you do it for them and you got caught in the middle." Troutt ended with a plea to have his name cleared.

If Troutt had been hoping to resolve matters easily with the August 24 letter, he was disappointed. In response, Judge Reagan entered a Supplemental Show Cause Order adding additional grounds for criminal contempt: Troutt's filing of pleadings in another Southern District case after he was suspended but before he was reinstated; the August 24 letter itself; and a flyer in which Troutt claimed that a state judge was "bought and paid for." This order required Troutt to respond by affidavit or memorandum by September 24. On September 25, one day late, Troutt did so. In addition to rehashing many of his earlier arguments, Troutt indicated that he thought that Judge Reagan should disqualify himself from the proceedings.

On October 27, two days before the scheduled hearing, Troutt moved for a continuance "for private and confidential health reasons." The court granted his motion and rescheduled the hearing for November 12. On November 10, Trout again asked for a continuance, noting that he had a hearing in another matter that conflicted with the scheduled hearing. The court denied that request, noting that it would consider Troutt's failure to appear, absent extraordinary circumstances, "as contumacious disregard for [the court's] order." On November 11, when the court was closed for Veteran's Day, Troutt filed a motion entitled "Respondent's Motion to Make His Record." In that motion, Troutt represented that he had "no less than eleven hearings, involving no less than sixteen clients, set for hearing on November 12, 2004 in other courts." The district court denied this motion on the same day. Predictably, Troutt failed to appear at the November 12 hearing. Judge Reagan issued a final order finding Troutt guilty of criminal contempt beyond a reasonable doubt, citing all of the grounds mentioned in the earlier orders plus his failure to show up at the hearing. Rather than punishing Troutt with a fine or imprisonment, however, the Order instead suspends Troutt from the practice of law in the district court for a period of five years, requires him to complete certain continuing legal education, and requires the Clerk of Court to provide copies of the order to all other courts to which Troutt is admitted.

## II

Before addressing the merits of this appeal, there are two preliminary matters we must address. First, we wish to express our thanks to *amicus curiae*, Michael J. Gonring of the law firm Quarles & Brady LLP, for his helpful brief on behalf of the district court. Second, given the unusual nature of the sanction the district court selected, we must ask whether the order before us is better characterized as

a criminal contempt judgment, or if it in the end was a decision about attorney discipline. Either way, it is an appealable judgment, because it finally resolves Troutt's case. If it is criminal contempt, punishable under 18 U.S.C. § 401, certain consequences will follow; if it relates to attorney discipline, those consequences are different, even though this too would be a "judicial" action properly challenged by appeal rather than recourse to the Judicial Council of the Circuit. See *Matter of Palmisano,* 70 F.3d 483, 484-85 (7th Cir. 1995); accord, *In re Martin,* 400 F.3d 836, 840 (10th Cir. 2005); *In re North,* 383 F.3d 871, 874 (9th Cir. 2004). See also *In the Matter of Jafree,* 741 F.2d 133 (7th Cir. 1984). Unfortunately, given the way matters unfolded, the order before us is something of a hybrid. The district court consistently said that it was conducting a criminal contempt proceeding, but, despite the fact that § 401 appears to limit the form of punishment to "fine or imprisonment," the court selected a disciplinary sanction.

We have concluded that the best approach is to take the court at its word, and to accept this as a criminal contempt proceeding. The order, after all, specifically states that the court has "found, beyond a reasonable doubt, that Eric D. Troutt's conduct before this Court constitutes criminal contempt." As such, this proceeding was (or should have been, as we shall see) governed both by § 401 and FED. R. CRIM. P. 42. Troutt, who is representing himself on appeal, presents three principal arguments: first, that his due process rights were violated by these proceedings; second, that the evidence did not support a finding of criminal contempt; and third, that the court's decision violated his First Amendment right to criticize the judge. We find it necessary to reach only his procedural arguments, because we conclude that procedural shortcomings in these proceedings require a remand.

Our analysis does not require us to plunge into constitutional doctrine. We look instead to the statute, 18 U.S.C. § 401, and the rule. Section 401 reads as follows:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as—
>
> (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;
>
> (2) Misbehavior of any of its officers in their official transactions;
>
> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

As this court noted in *Jafree,* "[s]ection 401 recognizes two types of contempt: direct and indirect. Direct contempt is contumacious conduct committed in the actual presence of the court, . . . and may be punished summarily." 741 F.2d at 135 (internal citation omitted). See also *United States v. Wilson,* 421 U.S. 309, 316 (1975). All other contempt must be treated as indirect contempt. Bearing in mind the principle that only "the least possible power adequate to the end proposed should be used in contempt cases," *Anderson v. Dunn*, 6 Wheat. 204, 231 (1821), the Supreme Court said in *Wilson* that "[w]here time is not of the essence, . . . the provisions of [FED. R. CRIM. P.] 42(b) may be more appropriate to deal with contumacious conduct. 421 U.S. at 319. Other factors distinguishing direct from indirect contempt include whether the act was committed in the presence of the judge and whether extrinsic evidence will be needed to prove the contempt.

It is worth underscoring, in this regard, that criminal contempt is a crime, like all other crimes. See *Bloom v. Illinois,* 391 U.S. 194, 201 (1968). It is for that reason that the Supreme Court has held that a person accused of criminal contempt enjoys the normal range of procedural rights. See *Int'l Union, United Mine Workers of America v. Bagwell,* 512 U.S. 821, 826-27 (1994) (referring to *In re Bradley,* 318 U.S. 50 (1943) (double jeopardy); *Cooke v.*

*United States,* 267 U.S. 517, 537 (1925) (rights to notice of charges, assistance of counsel, summary process, and to present a defense); *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 444 (1911) (privilege against self-incrimination and right to proof beyond a reasonable doubt); and, for contempts that involve imprisonment beyond six months, right to trial by jury, *Taylor v. Hayes,* 418 U.S. 488, 495 (1974)).

Rule 42 of the Federal Rules of Criminal Procedure implements these principles. Rule 42(a), in effect, addresses indirect contempts, while Rule 42(b) recognizes the power of the court to take summary action against "a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies." Our first task is to decide which of these subparts of the rule applies to Troutt's case. Although Judge Reagan stated in his order that the contempt had occurred in his presence, and so certified, most of the conduct mentioned in the show cause order is right on the margin. (The exception is Troutt's failure to appear at the November 12 hearing, which occurred in Judge Reagan's presence and which disrupted the court's proceedings.) The rest of the conduct that the judge cited in his show cause orders involved disrespectful language in papers filed with the court. Time was not of the essence. No trial was being disrupted by a failure to comply with a court order, compare *Wilson,* 421 U.S. at 316, nor was any other immediate function of the court threatened by Troutt's conduct. Although Troutt's acts strike us as right on the margin between the two categories, we conclude that at least some of the acts are better characterized as outside the court's presence, and so we turn to Rule 42(a) to see whether the proceedings in this case complied with it.

Rule 42(a) sets forth three basic requirements: adequate notice; the appointment of a prosecutor; and trial and disposition. The notice may be provided in one of three

ways: in open court, in an order to show cause, or in an arrest order. FED. R. CRIM. P. 42(a)(1). It must (1) inform the accused person of the time and place of the trial, (2) allow him or her a reasonable time to prepare a defense, and (3) state the essential facts constituting the criminal contempt. FED. R. CRIM. P. 42(a)(1)(A)-(C). The orders to show cause that Judge Reagan issued here complied with this part of the rule. We thus reject Troutt's position insofar as he is arguing (whether in the language of due process or under the Rule) that the notice was defective.

Troutt is on stronger ground, however, with respect to the second and third requirements of Rule 42(a). The requirement in Rule 42(a)(2) to appoint a prosecutor is spelled out in mandatory language: "The court *must* request that the contempt be prosecuted by an attorney for the government, unless the interest of justice requires the appointment of another attorney. If the government declines the request, the court *must* appoint another attorney to prosecute the contempt." (Emphasis added) The record does not reflect the appointment of any prosecutor filing an appearance for the November 12, 2004, hearing.

These proceedings also did not comply with Rule 42(a)(3), which reads as follows:

> A person being prosecuted for criminal contempt is entitled to a jury trial in any case in which federal law so provides and must be released or detained as [FED. R. CRIM. P.] 46 provides. If the criminal contempt involves disrespect toward or criticism of a judge, that judge is disqualified from presiding at the contempt trial or hearing unless the defendant consents. Upon a finding or verdict of guilty, the court must impose the punishment.

Because this contempt proceeding did not result in imprisonment for a period of more than six months, Troutt

had no right to a jury trial. See *Taylor v. Hayes, supra.* As our account of the facts makes clear, however, the criminal contempt here did "involve[ ] disrespect toward or criticism of [the] judge." That is certainly the way that Judge Reagan understood the progressively harsh letters and papers Troutt was submitting to the court. Troutt never consented to having Judge Reagan preside over the contempt proceeding.

In a situation like this, right at the borderline between direct and indirect contempt, the judge should err on the side of providing the procedural safeguards assured by Rule 42(a). Only if he concluded that time was of the essence, or that failure to act would leave the contempt unpunished, or that some other equally powerful reason compelled the use of Rule 42(b) summary procedures, should he act summarily. In this case, none of those exigencies was present, and Troutt did not commit his obvious direct contempt until his failure to appear at the hearing on the criminal contempt charges. We conclude that Troutt is entitled to a new contempt proceeding that complies with the requirements of Rule 42(a), including the assignment of a different presiding judge.

In conclusion, we address briefly some remaining points. First, on remand the court should consider carefully whether writing vituperative letters is a form of contempt, or if instead it is professional misconduct better addressed in a disciplinary proceeding. Second, because the question of penalty is a serious one, we conclude with a word about that. We read § 401 to permit either a fine, or imprisonment, or both, as a penalty for criminal contempt, but not to permit any other penalty. Thus, suspension from the bar of the court is not one of the measures the court may adopt to address the criminal contempt. This does not mean that Troutt has acquired some immunity from that fate, of course. It simply means that the court must follow the procedures outlined in its Local Rule 83.4,

which sets forth its Rules of Disciplinary Enforcement, if it concludes on remand that disciplinary action is either preferable to criminal contempt proceedings or should be undertaken in addition to those proceedings.

**III**

We caution Troutt that he has a professional duty to conduct himself courteously before all courts. See, *e.g.*, Standards for Professional Conduct within the Seventh Federal Judicial Circuit, section 2. Some of the language in his brief to this court did not measure up to those standards. Troutt is mistaken if he thinks that he is entitled to meet a judge's use of intemperate language (if and when that occurs, and we make no finding about this particular case) with mud-slinging of his own. There are other remedies for alleged judicial misconduct, as the district court has already reminded him. We trust that he will comport himself appropriately on remand, and that he will receive a fair hearing before the district court.

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*