In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-3711

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JUAN BRITTON,

*Defendant.*

APPEAL OF:    BEAU BRINDLEY

---

Appeal from the United States District Court for the
Central District of Illinois.
No. 2:10-cr-20090-MPM-DGB-1 — **Michael P. McCuskey**, *Judge.*

---

ARGUED SEPTEMBER 12, 2013 — DECIDED OCTOBER 3, 2013

---

Before WOOD, *Chief Judge,* and MANION and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* Beau Brindley represents defendant Juan Britton in this criminal case. The district court summarily held Brindley in contempt of court under Fed. R. Crim. P.

42(b). The court had set a status conference in the criminal case and ordered Brindley to appear in person. When Brindley failed to appear, the court issued an order to show cause why he should not be held in contempt. At the conclusion of the show cause hearing, the court found Brindley in contempt and remanded him to the custody of the United States Marshal for a period of two days. Brindley immediately appealed and filed an emergency motion for release from custody pending appeal, which this court granted. We vacate the district court's contempt finding and remand for further proceedings.

### I. BACKGROUND

In July 2011, Juan Britton was charged with two cocaine conspiracy counts and related offenses. His codefendant, Antonio J. Colon, was charged in one of the cocaine conspiracy counts. Later that month, Brindley and his associate, Michael Thompson, entered appearances as counsel for Britton. Months later, Britton and Colon were scheduled for a joint trial. Both defendants filed a motion to continue the trial date; the court set a hearing on their motions and ordered Brindley and Britton as well as Colon and his counsel to be present in court at the hearing. Britton appeared at the hearing with Thompson; Brindley did not appear. At a June 2012 status conference, the court scheduled a jury trial for February 2013 and set an October 31, 2012 deadline for pretrial motions. Colon filed a motion to suppress and other pretrial motions, but Britton did not file any pretrial motions.

On November 6, the court issued an order as to Britton, setting a status conference for November 26 "by personal appearance" to discuss pretrial motions and the jury trial, and

ordered Brindley "to be present in person … and not through other counsel." Britton appeared, but Brindley did not and he made no attempt to contact the court. Thompson did not appear either. The court clerk tried to reach Brindley by telephoning his office, but no one answered. The court set a show cause hearing for November 30, 2012 at 1:00 p.m., and ordered Brindley to "appear and show cause why he should not be held in contempt of court for his failure to appear for the status conference set by personal appearance for November 26."

On November 28, at 5:31 p.m., Brindley filed a response to the show cause order and moved to continue the show cause hearing. He stated that, prior to the November 26 status conference, he had not been expecting any order related to Britton, and was in the midst of another trial when the court issued its order setting the November 26 conference. He claimed he had not seen the court's order, and he apologized for his oversight. Brindley wrote that at the time of the November 26 conference, he was visiting a criminal defendant in jail, preparing him to testify at an evidentiary hearing.

In addition, Brindley requested a continuance of the show cause hearing, explaining that he was "scheduled to be in Will County for a short trial in *People v. Eatman*. There is apparently some chance that the trial might not go forward as scheduled. … [T]he necessary court appearance will make it essentially impossible for the undersigned to personally appear in person before this Court at 1:00 p.m." He also explained that due to other commitments, including a "massive trial" and hearings, he was requesting a continuance of the show cause hearing to

December 28, 2012. As an alternative, he indicated that he could be available by telephone the afternoon of December 3.

On November 29, the district court denied the motion to continue and ordered Brindley to be present in court on November 30. Later on the 29th, the government filed a notice of information regarding the order to show cause. The government stated that a review of the docket in *People v. Eatman* reflected that Timothy Witczak who was with the Law Offices of Beau B. Brindley had entered his appearance in the case; that since August 2012, the case had been set for trial on December 10, 2012; that on November 28, Witczak filed a motion by telephone to continue the December trial date; and that a hearing on the motion to continue was then set for November 30 at 9:30 a.m. The government also indicated that the Assistant State's Attorney (ASA) assigned to the *Eatman* case informed the federal prosecutor in an email that the case was set for trial on December 10; that Witczak called the ASA on November 28 (the email indicated October, but a later communication established this was an error), stating that he would like to file a motion to continue; that the ASA advised Witczak that he would not object; that the case is set for a hearing on the recent continuance motion on November 30; and that Witczak was the only defense attorney of record at that time.

Shortly thereafter, Brindley filed a response to the government's notice of information in the Britton case, stating that Witczak was his associate and that as the attorney of record in *Eatman*, Witczak had handled preliminary matters in the case, but Brindley would be the trial attorney. Brindley offered this explanation:

Mr. Witczak asked the undersigned to appear with him for a hearing on November 30, 2012, which would determine if the trial in the *Eatman* case would be continued. When asked, the undersigned believed that the trial was actually scheduled for November 30, but was likely to be continued. Mr. Witczak was asking him to appear to insure that the continuance was granted. The undersigned believed that, in the event the continuance was not granted, they would proceed with the trial as scheduled on that day, which he believed he was required to be present for.

Brindley also asserted that late in the afternoon of November 29, Witczak corrected his erroneous belief that the *Eatman* trial was scheduled for November 30 and advised that only the motion to continue was scheduled for that date. Witczak's affidavit was attached to Brindley's response. Witczak attested that he was "required to appear on November 30, 2012, for a motion to continue the trial date in the *Eatman* case. I expect that motion to be granted, but I asked Attorney Brindley to appear with me to make certain that the continuance is granted as he is the attorney who will try the case." Witczak also stated that on the afternoon of November 29, Brindley told Witczak what he should do if the judge wanted to proceed with the trial the following day, and Witczak explained to Brindley that the trial was not set until December 10 and that he was seeking a continuance of the December trial date at the November 30 hearing in Will County.

The district court held the show cause hearing on November 30; Brindley appeared and was sworn. The court explained why it had scheduled the November 26 status conference and offered Brindley the opportunity to explain why he should not be held in contempt of court. Brindley first apologized for his failure to appear on the 26th and claimed that it was not a willful failure. He then offered an explanation for his failure to appear, which was consistent with his filings. As to his supposed unavailability for the show cause hearing, he added that when Witczak asked him to appear with him in Will County to obtain a continuance in the *Eatman* case, he thought the case was set for trial on the 30th. The district court questioned Brindley further, and Brindley denied knowingly making a false statement. The judge advised that he had contacted the chief judge in Will County to inquire about the *Eatman* case and expressed doubt over Brindley's proffered explanation. The prosecutor stated that the ASA in the *Eatman* case had advised her that the case had not been set for hearing on the 30th until the 28th, that Witczak had contacted the ASA on the 28th at about 2:30 or 3:00 p.m., stating that he would file a motion to continue, and that the ASA told Witczak he would not object.

The judge found it clear that Brindley "tr[ied] to create a November 28th lie" by having his associate create an excuse for him not to be at the show cause hearing. The judge found Brindley in contempt of court and remanded him to the custody of the U.S. Marshal for 48 hours. Brindley appealed and filed an emergency motion for release pending appeal, which this court granted.

A few days later, the district court issued its written opinion, finding that Brindley's motion to continue "contained demonstrably false statements" and that Brindley "made false statements to this court" on November 30. More specifically, it found that he was untruthful "about his failure to appear in person after being clearly and specifically ordered to do so by this court" and "about his unavailability on November 30." The opinion cited both 18 U.S.C. § 401(1) and (3), and stated the elements of criminal contempt under § 401(3). The court concluded that "Brindley willfully violated a court order, willfully made false statements in his Motion to Continue, and willfully provided false testimony before this court," and summarily held him in contempt of court under Fed. R. Crim. P. 42(b).

## II. ANALYSIS

Brindley contends that the district court's contempt finding was erroneous because the court erred in using Fed. R. Crim. P. 42(b)'s summary contempt procedures, and because the evidence was insufficient as a matter of law to prove criminal contempt. The government agrees that the court erred in using the summary contempt procedures, but argues that the proper remedy is a remand for further proceedings under Fed. R. Crim. P. 42(a). We agree with the government.

A federal court has the authority to punish contempt by imprisonment. 18 U.S.C. § 401. Contempt includes "[m]isbehavior of any person in [the court's] presence or so near thereto as to obstruct the administration of justice," *id.* § 401(1), and "[d]isobedience or resistance to [the court's] lawful … order … ," *id.* § 401(3). (Subsection (1) requires proof

of an actual obstruction of justice, whereas subsection (3) lacks such a requirement. *United States v. Griffin*, 84 F.3d 820, 832 & n.9 (7th Cir. 1996).) "'Section 401 recognizes two types of contempt: direct and indirect.'" *In re Troutt*, 460 F.3d 887, 893 (7th Cir. 2006) (quoting *In re Jaffree*, 741 F.2d 133, 135 (7th Cir. 1984)). "'Direct contempt is contumacious conduct committed in the actual presence of the court … and may be punished summarily.' All other contempt must be treated as indirect contempt." *Id.* (quoting *Jaffree*, 741 F.3d at 135) (citation omitted).

Federal Rule of Criminal Procedure 42(a) establishes the procedures for indirect contempt; Rule 42(b) allows for summary contempt procedures in cases of direct contempt. *See* Fed. R. Crim. P. 42(b) ("[T]he court … may summarily punish a person who commits criminal contempt in its presence if the judge saw or heard the contemptuous conduct and so certifies."). Summary disposition of contempt is appropriate only "when 'the express requirements of [Rule 42(b)] are met and when there is a 'compelling reason for an immediate remedy' or time is of the essence." *FTC v. Trudeau*, 606 F.3d 382, 386 (7th Cir. 2010) (quoting *United States v. Moschiano*, 695 F.2d 236, 251 (7th Cir. 1982)). The first requirement means that the contempt occurred in the judge's presence and "the judge saw or heard the contemptuous conduct … ." *Id.* (quoting Fed. R. Crim. P. 42(b)). If the judge has to rely on extrinsic evidence to make a contempt finding, summary procedures are inappropriate. *See id.* at 387. As for the second requirement, "[t]he need for the court to conduct its duties is the fundamental rationale underlying the court's summary contempt powers." *Id.* at 389.

None of Brindley's conduct satisfies these requirements for summary adjudication. The failure to appear at the November 26 status conference did not occur in the court's actual presence. *See, e.g.*, *In re Gates*, 600 F.3d 333, 339 (4th Cir. 2010) ("[M]ere tardiness or absence at a scheduled court appearance is not a direct contempt subject to summary disposition under Rule 42(b)."); *see also United States v. Peoples*, 698 F.3d 185, 192 (4th Cir. 2012) (citing cases). The statements purported to be false in the motion to continue did not occur in the court's presence either. *See United States v. Oberhellmann*, 946 F.2d 50, 52 (7th Cir. 1991) ("[A] mere filing in the clerk's office could not rise to the level of a contempt committed in the 'actual presence of the court… .'"). And the testimony at the show cause hearing can be found contemptuous only once the judge relies on extrinsic evidence and engages in fact-finding; thus summary disposition was improper. *See Trudeau*, 606 F.3d at 387–88. The same is true for the suspect statements in the motion to continue. Furthermore, with respect to all three instances of conduct, there was no need for immediate punishment: Brindley's actions did not obstruct any proceedings or other court function. *See Trudeau*, 606 F.3d at 389 ("[B]ecause the conduct occurred outside the judge's presence and, rather than being forced to stop proceedings by [the] behavior, the judge had to actually *convene* proceedings … , summary contempt should never have been an option here.").

That brings us to the question of remedy. Brindley argues that the evidence at the contempt hearing was insufficient as a matter of law to establish contempt. Specifically, he argues there was no evidence that his failure to appear on November 26 was willful and there was no evidence that his false state-

ment about the *Eatman* trial setting was intentional. He also challenges the judge's finding that he lied at the contempt hearing.

Even assuming we have the discretion to address Brindley's sufficiency of the evidence challenge, *see Gates*, 600 F.3d at 342 (concluding that a remand "would serve no purpose" where the record was "devoid of evidence" that the defense attorney willfully failed to appear on time for plea hearing or failed to appear on other occasions); *United States v. Seale*, 461 F.2d 345, 352, 371 (7th Cir. 1972) (finding four of sixteen contempt charges "insufficient as a matter of law" under 403(1) where "no actual, material obstruction occurred"), the better course is to remand for further proceedings under Rule 42(a). This is the path we have chosen in more recent cases. *See Trudeau*, 606 F.3d at 390–91 (declining to resolve substantive arguments about the evidence and remanding for development of a more complete record); *Troutt*, 460 F.3d at 892–93, 895 (concluding "that procedural shortcomings in these proceedings require a remand" and declining to address the argument whether the evidence supported a finding of criminal contempt).

While we agree that "[n]egligence … is insufficient to sustain a conviction under 18 U.S.C. § 401(3)," *Gates*, 600 F.3d at 342, the limited record before us does not foreclose the conclusion that further factual development in accordance with the procedures under Rule 42(a) could sustain a finding of criminal contempt. Similar to *Trudeau*, "[t]he posture of this case," 606 F.3d at 390, on appeal from summary disposition, makes it impossible to determine whether Brindley's conduct violated § 401. *See id.* As noted, some of the conduct for which the district court found him in contempt occurred off the

record, and other facts outside the record bear on whether he intentionally made false representations in his motion to continue and gave false testimony. Even apart from the question of whether Brindley's failure to appear on November 26 was willful, the sequence of the events leading up to the filing of the motion to continue on November 28, the motion itself, and certain aspects of his testimony on November 30 are sufficiently troubling to preclude a determination on the record before us that contempt cannot be proved as a matter of law.

We do not know whether the district court will continue with the contempt proceedings, but if it does, the proceedings will be conducted by a different district judge because Judge McCuskey has recused himself from this case. And should the district court resume the contempt proceedings, it will need to refer the matter to a prosecutor under Rule 42(a), and it is unclear what charges the prosecutor may pursue. As in *Trudeau*, arguments about whether any of Brindley's conduct was contemptuous "should be made in the first instance in the district court." *Id.*

Finally, we note that Brindley's suggestion that a remand presents double jeopardy concerns is unfounded. *See Trudeau*, 606 F.3d at 390 (citing *Lockhart v. Nelson*, 488 U.S. 33, 38 (1988) ("[T]he Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside … because of some error in the proceedings leading to conviction.")).

**III. CONCLUSION**

We VACATE the district court's contempt finding and remand for further proceedings consistent with this opinion.