In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 13-1350

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MASON M. JOHNSON,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 CR 32-1 — **Rebecca R. Pallmeyer**, *Judge.*

_____

ARGUED JANUARY 28, 2014 — DECIDED FEBRUARY 6, 2014

_____

Before WOOD, *Chief Judge*, and EASTERBROOK and KANNE,
*Circuit Judges*.

EASTERBROOK, *Circuit Judge*. A jury convicted Mason
Johnson of robbing three banks, and a judge sentenced him
to 220 months' imprisonment. The principal testimony
against him came from Joseph Prince, who told the jury that
he and Johnson had planned and executed the robberies to-
gether. Johnson asked the jury to discount the testimony of
Prince, a confessed criminal. The prosecutor sought to bol-

ster Prince's testimony with that of Amanda Williams, who related that Prince asked her to give him a ride one day and was accompanied by a stranger when she picked him up. She drove her passengers to several places, last of all a grocery store. Prince and the stranger entered the store and robbed the branch bank it contained. Williams had not met the stranger before and did not know his name, but she picked a photo of Johnson from an array of six photos. Johnson's only appellate argument is that the judge should not have allowed Williams and the agent who conducted the array to testify about this identification.

Johnson observes that this court has suggested that police show photographs sequentially rather than as part of an array. See, e.g., *United States v. Ford*, 683 F.3d 761 (7th Cir. 2012); *United States v. Brown*, 471 F.3d 802 (7th Cir. 2006). Some research in psychology, which these opinions cite, concludes that a sequential display is preferable because it forces the witness to compare each photograph against memory, rather than one photograph against another, and it avoids the risk that a witness will conclude that the suspect's picture is bound to be among the six (or some) other number of photos in an array. Careful officers tell a witness that a photo spread does not necessarily include any suspect (that was done here), but witnesses still may suspect that it does or may proceed that way subconsciously, because none of us is fully in control of the processes by which the brain makes identifications.

Some parts of Johnson's briefs imply that *only* a sequential presentation can lead to admissible evidence, but at oral argument his lawyer sensibly disclaimed any such proposal. The Supreme Court has not adopted a rule that only "the

best" approach (as the latest social science research identifies the best current understanding) can be used. Instead, it has concluded, "[t]he Constitution … protects a defendant against a conviction based on evidence of questionable reliability, not by prohibiting introduction of the evidence, but by affording the defendant means to persuade the jury that the evidence should be discounted as unworthy of credit." *Perry v. New Hampshire*, 132 S. Ct. 716, 723 (2012). The due process clause of the fifth amendment does forbid the use of "an identification procedure that is both suggestive and unnecessary. [But e]ven when the police use such a procedure … suppression of the resulting identification is not the inevitable consequence." *Id*. at 724 (citations omitted). Suppression ensues only when there is "a very substantial likelihood of *irreparable* misidentification," *Simmons v. United States*, 390 U.S. 377, 384 (1968) (emphasis added)—irreparable in the sense that the procedures of trial would not suffice to allow jurors to separate reliable from mistaken identifications.

Johnson has not attempted to show that all photo spreads are both unnecessary and suggestive, or that all identifications facilitated by a photo spread make it impossible for counsel to use the tools of the adversary process to explore an identification's reliability. Indeed, some recent research has called into question the view that sequential presentation of photographs is superior to photo spreads. David G. Dobolyi & Chad S. Dodson, *Eyewitness Confidence in Simultaneous and Sequential Lineups: A Criterion Shift Account for Sequential Mistaken Identification Overconfidence*, 19 J. Experimental Psychology: Applied 345 (2013), gives some reasons and cites other studies. The Supreme Court of New Jersey, which has gone further than any other appellate tribunal in controlling the methods of obtaining and presenting eyewit-

ness identifications, has declined to require sequential methods exclusively. See *State v. Henderson*, 208 N.J. 208, 256–58 (2011). The Supreme Court's approach, which *Perry* summarizes, precludes a federal court of appeals from requiring them.

We therefore ask whether the district judge erred in concluding that the photo array was not unnecessarily suggestive—a subject that a court of appeals resolves independently, "but with due deference to the trial court's findings of historical fact." *United States v. Harris*, 281 F.3d 667, 670–71 (7th Cir. 2002). After finding the array not suggestive, the judge stopped the analysis, for she did not need to consider other questions, such as whether Williams had viewed Johnson long enough to provide a solid basis for memory independent of the array, and whether any shortcoming in the procedure the police used could be brought to the jury's attention at trial.

The judge found that the array was proper because all six photos met Williams's description: a bald black man with a small amount of facial hair. A glance at the array shows this to be correct:



All six men also were in the same clothing and photographed against the same background. Johnson's lawyer observes that the men have different skin coloration, but that is inevitable in any array or sequence of photos—just as it is inevitable that the facial hair, ear sizes, and chin shapes will not be identical. A "lineup of clones is not required." *United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir. 1998). "[I]t's impossible to find photos of persons who are identical to a suspect … and also undesirable, because then the witness

wouldn't be able to identify the suspect." *Ford*, 683 F.3d at 766. Nothing about this array makes the photograph of Johnson (#3) stand out. The array was not suggestive, and it is therefore unnecessary to consider the remainder of the analysis prescribed by *Perry* and its predecessors, such as *Simmons*; *Manson v. Brathwaite*, 432 U.S. 98 (1977); *Neil v. Biggers*, 409 U.S. 188 (1972); and *Stovall v. Denno*, 388 U.S. 293 (1967).

We have said enough to decide the appeal. Before closing, however, we add that Beau B. Brindley, who represented Johnson in this court, made it unduly hard for us to access the materials necessary for disposition. The first step in analyzing an appeal is understanding the basis of the district court's decision. A court of appeals can't decide whether a district judge made clearly erroneous findings or committed a legal error without knowing what the judge did and why. That's why Circuit Rule 30(a) requires counsel for the appellant to include, in an appendix to the brief, "any opinion, memorandum of decision, findings of fact and conclusions of law, or oral statement of reasons delivered by the trial court or administrative agency upon the rendering of that judgment, decree, or order." Circuit Rule 30(b)(1) adds that the appendix also must include "any other opinions, orders, or oral rulings in the case that address the issues sought to be raised."

Johnson filed a pretrial motion asking the district court to exclude evidence that Williams had selected Johnson from the array. The judge denied this motion in an unreasoned minute order entered on July 3, 2012. Anyone reading Brindley's brief would think that the court *had* no reasons—that the decision was wholly arbitrary. But the brief for the Unit-

ed States told us that there were findings and reasons, and it includes a short quotation from the hearing held on July 3. Unfortunately, the United States did not supply the full transcript—and when we looked for it to prepare for argument, we discovered that it was not in the record. That hampered our ability to evaluate the arguments for both sides. (Shortly after argument it was added to the record; we have retrieved and read it.)

That the judge gave reasons, which Brindley omitted, shows that he violated not only Rule 30(b)(1) but also Circuit Rule 30(d): "The appendix to each appellant's brief shall contain a statement that all of the materials required by parts (a) and (b) of this rule are included. If there are no materials within the scope of parts (a) and (b) of this rule, counsel shall so certify." Johnson's brief contains this representation: "I, Beau B. Brindley, counsel for the Defendant-appellant Mr. Mason Johnson, state that the appendices submitted with this brief on appeal incorporate the material required under Circuit Rule 30(a) and (b)." This representation is false.

We asked Brindley at oral argument how the omission and falsehood had occurred. He replied that he had been retained as Johnson's lawyer late in the process. The appeal began in February 2013, and by July 26, 2013, when Ralph J. Schindler, Jr., Johnson's first appellate lawyer, asked the court to allow Brindley to take over the appeal, the time to file the opening brief had been extended three times. We granted a fourth extension, allowing six weeks for Brindley to prepare adequately, but added that the new date was final. (Our order of July 30, 2013, provides: "No further extensions, at the request of Schindler or any other lawyer representing Mason Johnson, will be allowed under any circum-

stances.") Brindley told us at argument that Schindler neglected to order the transcript of the July 3, 2012, hearing and that, by the time he discovered this hole in the record, it was too late to get the hearing transcribed and still meet the deadline. On September 9 he asked for an extension of time so that he could obtain the missing transcript; given the order of July 30, the court turned him down. Brindley then elected not to order the transcript.

Brindley's deferred arrival as Johnson's appellate lawyer, coupled with his predecessor's neglect, may explain why he did not *have* the transcript in time to file a brief (though he ought to have discovered the problem in July rather than September), but it does not explain why he failed to *order* the transcript. He could have done so and furnished it to the court as soon as it was ready—which would have been in time for the United States' brief and Johnson's reply brief. And it assuredly does not explain why Brindley chose to file a false certificate, a step that Brindley's narrative reveals as deliberate deceit. He *knew* that the appendix omitted the district judge's findings and explanation, yet he told the court that all required materials had been included. For a lawyer who last year was held in contempt for lying to a federal judge, see *United States v. Britton*, 731 F.3d 745 (7th Cir. 2013), that was a mighty strange decision. (The district judge in *Britton* used the summary-contempt process under Fed. R. Crim. P. 42(b), which we determined was a mistake. We remanded for a more complete process.)

Brindley should have ordered the transcript, noted in the Rule 30(d) statement that it was being prepared and would be furnished as soon as possible, and provided it before the panel of judges started their preparation (which happens a

few weeks before argument). He did none of these things, choosing deceit over assistance to the court. Could Brindley have thought that neither the prosecutor nor any one of the three judges would notice that the district judge's explanation for her decision was missing? Yet he not only failed to order the transcript but also ignored it once the prosecutor had it prepared and relied on it in the brief for the United States. Brindley's reply brief, like his opening brief, proceeds as if the district judge neither had nor gave any reason for her decision.

Brindley may not have set out to develop a reputation as a lawyer whose word cannot be trusted, but he has acquired it. This opinion serves as a public rebuke and as a warning that any further deceit will lead to an order requiring Brindley to show cause why he should not be suspended or disbarred. We also direct Brindley to pay $2,000 as a sanction for his intentional violation of Circuit Rule 30(d). See, e.g., *United States v. Rogers*, 270 F.3d 1076, 1084–85 (7th Cir. 2001) ($1,000 fine for a negligent violation).

The judgment is affirmed; Brindley is fined $2,000, payable to the clerk of court within two weeks.